COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
SAMUEL JOHN PENEGAR,                             )                  No. 08-03-00413-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  161st District Court
)
THE STATE OF TEXAS,                                   )                  of Ector County, Texas
)
                                    Appellee.                          )                  (TC# B-30,344)

O P I N I O N

            Samuel John Penegar appeals his conviction for three counts of aggravated sexual assault of
a child. The jury assessed punishment at ten years imprisonment. Finding no error, we affirm.
FACTUAL SUMMARY
            Although he was married to someone else, Appellant and Sandra Rich engaged in a sexual
relationship resulting in the birth of S.R. Sandra’s sister Cindy was a friend of Appellant’s wife. 
At Cindy’s instigation, Sandra began to allow Appellant to visit with S.R. from the time she was four
until she made her outcry in the summer of 2002. Sandra was a dancer at a strip club but she denied
ever showing S.R. what she did as a dancer. Sometimes S.R. would play with Sandra’s dancing
clothes. Sandra admitted that CPS had investigated her four or five times in the past. She denied
ever talking to Cindy about S.R. living with Appellant permanently but she acknowledged that the
thought of losing custody of her daughter caused her pain. 
            Sandra contacted the Ector County’s Sheriff Office about the child’s allegations and
Investigator Claudia Bretz was assigned to the case. Officer Bretz contacted Sandra and asked her
to bring S.R. to the Harmony Home Children’s Advocacy Center for an interview. On July 10, 2002,
Eve Flores interviewed the child. She introduced herself on the videotape and asked S.R. whether
she knew the difference between a truth and a lie. S.R. answered that the truth was good and a lie
was bad. She said that it was important to tell the truth in order to be a better person. If Flores were
to say that S.R. was ten years old, it would be a lie since she was only seven. If Flores said that
S.R.’s mother had brought her to the Harmony Home, that would be the truth since her mother had
brought her to talk about what Appellant did to her. The child promised to tell the truth. 
            The first time Appellant touched S.R. was while his wife was in the hospital having a baby. 
S.R. was six years old at the time. S.R. asked Appellant for a drink while he was in the bathroom. 
He came out of the bathroom walking funny since he still had his pants down. S.R. saw his
“private.” He walked over to a black and white computer chair in the bedroom, sat down, and told
her to come to him. He told her to suck his private, saying she should get on her knees, go real fast,
and put it to the back of her throat. Appellant told her this was “deep throating.” S.R. explained that
deep throating meant to put it far back and choke. Appellant’s private had a line around it where she
barely put it in her mouth. He placed his hands on her head and pushed his private into her mouth. 
S.R. did what she was told because she did not want to get in trouble. It felt weird and made her
choke. She characterized his private as soft at first and then hard. She described it as “yucky” and
when“that yucky, white, slimy stuff” came out of his private into her mouth, she spit it out. 
Appellant told her to never tell anyone about what had happened. The child felt sad and wanted to
go home.
            The next day, Appellant touched her “private” with his mouth using his tongue. He also
turned her over on her belly and “stuck his private up her butt.” She characterized his private as hard
and said that what he did to her hurt. The white stuff came out again and went up her “hiney.” 
Appellant also put his finger inside her private. When she went to the bathroom later, she saw blood
coming out of her “hiney.” S.R. demonstrated these actions using anatomically correct dolls.
            S.R. also described a video that Appellant had her watch on another occasion when his wife
was out. The video showed an adult male and female, both blonde. S.R. showed what the adults
were doing on the video using anatomically correct dolls. Appellant made S.R. suck on his private
while he watched the video. “White yucky stuff” went into her mouth, and she spit it out. Flores
asked whether Appellant had ever done these things to anyone else, and S.R. said she had walked
in on Appellant and his wife once when they were doing it under the blankets. 
            When asked what she would tell Appellant, S.R. replied she would tell him to leave her
alone. When asked what should happen to him, S.R. said he should go to prison for the rest of his
life. When Flores left the room, S.R. played with the dolls and put their clothes back on. As a result
of the interview, Officer Bretz obtained an arrest warrant. 
            The videotaped interview was admitted into evidence at trial. The trial court determined that
S.R. was “unavailable” to testify in court, but the defense was allowed to cross-examine her at
Harmony House. This interview was also videotaped. S.R. was given an oath and she agreed to tell
the truth. By the time of trial, S.R. was eight years old. She described her family and who lived in
her house. Defense counsel showed her several pictures, but she did not know who any of the people
in the pictures were. She did not remember going to Appellant’s house and did not remember
Appellant or his wife. She acknowledged that she had been told to tell someone if she were
“touched.” She had told her mother, father, the police, and the courthouse that Appellant touched
her. She did not remember when it happened or what had happened but she did remember telling
her mother a year earlier and that it had been going on for a long time. 
            S.R. was examined on July 31, 2002 by registered nurse Linda Pinter. Pinter testified that
S.R. complained of sexual assaults which had been occurring for thirteen or fourteen months. Pinter
could not recall having found trauma or indicia of sexual assault, but if the contact had been oral,
it would be unlikely to find evidence of trauma since the mouth heals quickly. Trauma would
depend on the location and extent of penetration. Penetration may or may not cause injury and where
an assault has occurred as much as a year earlier, it would not be unusual for evidence of trauma to
be absent. In addition, trauma to the anus may heal with a scar that is hidden in the folds and may
not be visible. 
            Cindy Croom, Sandra’s sister, testified for the defense. Sandra had a bad reputation for
truthfulness and for being a law abiding citizen. Cindy thought it was important and beneficial for
S.R. to know her biological father and she pushed Sandra to allow visitation. S.R. was always happy
to visit with Appellant and she talked positively about her visits when Cindy saw her. She never
appeared scared. Appellant included S.R. in his family and took her along on family outings. Cindy
believed that S.R. and Appellant had a good relationship. In contrast, Cindy noted that Sandra was
a dancer and would be out late at night; Sandra screamed at the kids, cussed and hit them, and did
not have much patience with them. Cindy characterized S.R. as highly intelligent and very dramatic. 
S.R. knew her mother was a stripper and was “touchy, feely.” Cindy watched her children carefully
when they were around S.R. When Cindy told Sandra that it was in S.R.’s best interests to live with
Appellant, Sandra became angry.
            Paula Rennegarbe testified that she was the director of Christ Is In School, where Appellant’s
children attended. Appellant had a good reputation for truthfulness and she characterized him as a
caring parent who was involved with his children, spoke to their teachers, and attended parent days. 
Tina Young, Appellant’s coworker, also testified about Appellant’s good reputation for truthfulness. 
            Carie Duncan’s husband was a close friend of Appellant. She described a family trip to the
lake. Because she was pregnant, Carie stayed ashore and watched the children while the other adults
went out in the boat. S.R. was preoccupied with Carie’s pregnancy and wanted to know whether the
baby was a boy or a girl. S.R. told Carie that her mother told her how babies were born and that her
mother let her stay in the room when she was with a male companion. She had observed her mother
having sex. 
            Appellant’s mother-in-law, Judy Cawley, visited S.R. and her other grandchildren once or
twice a week. S.R. acted “too old for her age” and the main thing on her mind was sex. The child
would strip the clothes off her dolls and say they were having sex. Cawley discouraged this conduct
and believed the girl had been exposed to things that were inappropriate for her age. Suzanne May
grew up with Sandra and was friends with Appellant’s wife. May’s son was uncomfortable around
S.R. since she tried to hug, kiss, and sleep with him. May instructed her son to stay away from her. 
She believed that S.R. was a sweet, needy child, who embellished her stories but never blatantly lied. 
            Appellant’s wife, Terry Penegar, testified that when S.R. was three years old, Sandra decided
she wanted Appellant to be a part of the child’s life. Terry construed this overture as Sandra wanting
a babysitter so she could go to another town to pursue her dancing. S.R. would visit on holidays and
in the summer and sometimes during the school year. They had welcomed the child into the family
and Appellant was a good parent. Terry noticed that S.R. knew a lot for her age and talked of things
sexual in nature. She had told Terry’s father that she wanted to be a stripper like her mom. On
several occasions, Appellant talked to Sandra and Cindy about S.R. living with him permanently. 
Sandra said they better not seek custody or they would never see S.R. again. 
            Appellant testified that he worked as a shop foreman and mechanic and was married with
three children in addition to S.R.. Appellant began visiting with S.R. when she was three years old
and he had welcomed S.R. into his home. He loved the child and wanted custody of her due to
Sandra’s lifestyle. Appellant noticed that S.R. talked about sexual matters that his other children did
not understand. When Appellant told Sandra that he wanted custody, he was not allowed to visit for
four months. The last conversation regarding custody was approximately eight months before the
abuse allegations surfaced. S.R. had gone home in good spirits on June 29 or 30 after the family
visited the lake. Appellant denied ever touching S.R. in an inappropriate way. He took special care
to not let his children around questionable people and to not give his daughters baths. He thought
S.R. had acquired her sexual knowledge from her parents since they were perverted people who both
worked in strip clubs and were sexually active in and out of the home. Appellant believed that the
allegations were fabricated and rehearsed.
SUFFICIENCY OF THE EVIDENCE
            In Point of Error One, Appellant challenges the sufficiency of the evidence to support his
conviction. In reviewing legal sufficiency, we must review all the evidence, both State and defense,
in the light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159
(Tex.Crim.App. 1991), overruled on other grounds, Paulson v. State, 28 S.W.3d 570
(Tex.Crim.App. 2000). This familiar standard gives full play to the responsibility of the trier of fact
fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences
from basic to ultimate facts. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do
not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier
of fact to do so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the
explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted
at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843. 
Further, the standard of review is the same for both direct and circumstantial evidence cases. Geesa,
820 S.W.2d at 158.
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or if the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).            The Court of Criminal Appeals clarified this factual sufficiency standard of review in Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004) providing there is only one question to be
answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a
jury rationally justified in finding guilt beyond a reasonable doubt? However, the court found two
ways in which the evidence may be insufficient: (1) when considered by itself, evidence supporting
the verdict may be too weak to support the finding of guilt beyond a reasonable doubt, and (2) there
may be both evidence supporting the verdict and evidence contrary to the verdict. Id. at 485. Thus,
weighing all the evidence under this balancing scale, the contrary evidence may be strong enough
that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should
not stand. Id. This standard acknowledges that evidence of guilt can “preponderate” in favor of
conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. 
Id. Stated another way, evidence supporting guilt can “outweigh” the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard. Id. 
Aggravated Assault of a Child
            The offense of aggravated sexual assault of a child is committed if a person intentionally or
knowingly causes the penetration of the anus or sexual organ of a child by any means, causes the
penetration of the mouth of a child by the sexual organ of the actor; causes the sexual organ of a
child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;
causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including
the actor; or causes the mouth of a child to contact the anus or sexual organ of another person,
including the actor and the victim is younger than fourteen years of age. Tex.Pen.Code Ann. §
22.021(a)(1)(B)(Vernon Supp. 2004-05). Here, the indictment charged Appellant with (1) the
penetration of S.R.’s anus with his sexual organ, (2) the penetration of S.R.’s mouth with his sexual
organ, and (3) the penetration of S.R.’s female sexual organ with his finger. 
Evidence Presented
             S.R. testified that Appellant put his private in her butt, put his private in her mouth, and put
his tongue and finger in her private. A conviction for aggravated sexual assault “is supportable on
the uncorroborated testimony of the victim of the sexual offense if the victim informed any person,
other than the defendant, of the alleged offense within one year after the date on which the offense
is alleged to have occurred.” Tex.Code Crim.Proc.Ann. art. 38.07(a)(Vernon 2005). This
requirement does not apply if the victim is seventeen years of age or younger. Id. at art. 38.07(b)(1). 
The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual
assault or indecency with a child. Perez v. State, 113 S.W.3d 819, 838 (Tex.App.--Austin 2003, pet.
ref’d). Viewing the evidence in a light most favorable to the verdict, we believe that a rational jury
could have found the essential elements of aggravated sexual assault beyond a reasonable doubt. 
Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. 
            With regard to factual sufficiency, Appellant argues that the following factors weigh strongly
against his guilt:
•The allegations against him charged the assault with having occurred between January 1,
2001 until July 31, 2002. S.R. did not make an outcry until July 2002. 

            •The medical examination revealed no trauma. 
 
•Sandra became anxious and upset on the stand when questioned about losing custody of her
daughter. This fear motivated her to fabricate the allegations.
 
•When S.R. was cross-examined by defense counsel, she repeatedly answered, “I can’t
remember,” she could not identify Appellant, his wife, or his children in pictures, and did not
remember being touched inappropriately. This demonstrated that the child had been coached
in her testimony. 
 
•Sandra was a topless dancer and had performed sexual acts in front of S.R. This explained
S.R.’s sexual awareness which exceeded the knowledge of other seven-year-olds. The main
thing on her mind was sex. She would strip the clothes off of dolls and say they were having
sex. S.R. was imaginative and had a problem with lying. The sexual tendencies of the child
coupled with the environment in which she was raised refuted the State’s argument that a
child of her age would not be able to relate the story on the videotape unless it were true. 
 
•Appellant was a devoted father, took his children to a Christian school, and had a good
reputation for truthfulness and for being law abiding citizen. He had welcomed S.R. into his
family and provided a stable home.

Relying upon Edwards v. State, 107 S.W.3d 107 (Tex.App.--Texarkana 2003, pet. ref’d), Appellant
finally suggests that the videotape of S.R.’s testimony was unreliable and untrustworthy. He argues
that the interviewer did not give an age appropriate oath. While Flores mentioned the importance
of telling the truth, she did not mention the penalty for failure to tell the truth. S.R. grew up in an
environment where truthfulness was of no significance and both Sandra and S.R. had a bad
reputation for being truthful. The interviewer asked leading questions and the child’s answers
seemed rehearsed. She appeared relaxed and once the interviewer left the room, her main interest
was the dolls. While her declarations might be unusual for a child of her age, S.R.’s home
environment and sexual tendencies explained her terminology. When S.R. was asked what should
happen to Appellant, she responded that he should spend the rest of his life in prison. A child of
seven would not normally equate life in prison for the alleged incident, indicating that S.R. was
coached. Her mother had told her the purpose of the interview and had driven her to the interview. 
Sandra had a motive for fabrication. Finally, while the video was clear, the audio track was difficult
to hear. 
Analysis
            We begin our analysis with Chambers v. State, 755 S.W.2d 907 (Tex.App.--Houston [1st
Dist.] 1988), rev’d, 805 S.W.2d 459 (Tex.Crim.App. 1991). There, the videotaped interview of the
complaining witness was admitted into evidence. The witness then testified at trial and repudiated
her prior statement, denying the defendant had committed the acts alleged. Id. The defendant asked
the court to find that the complainant’s in-court, sworn repudiation of her out-of-court unsworn
videotape destroyed the tape’s probative value. Id. at 909. In sustaining his sufficiency argument,
the intermediate court concluded that the allegations could have been proven only by reliance on
repudiated prior inconsistent statements. The Court of Criminal Appeals acknowledged that the
witness testified inconsistently but questioned whether this was a true repudiation or merely a
conflict in testimony. Id. The jury had observed the complainant’s demeanor and was entitled not
only to reconcile any conflicts, but even to disbelieve her recantation. Id. The court determined that
the recantation of the videotaped testimony thus did not destroy its probative value. Id. 
            Here, S.R. was interviewed regarding her outcry. Using the vernacular, she described how
Appellant made her suck on his private, how he stuck his private up her hiney, and how he had
touched her private with both his tongue and finger. On cross-examination, she could not remember
when or how Appellant touched her but remembered telling her family that it had occurred. While
Appellant argues that she repudiated her prior testimony, we perceive a conflict in her testimony 
which the jury was entitled to reconcile. Chambers, 805 S.W.2d at 461. 
            We turn next to Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). 
There, the Supreme Court identified several factors to be applied in assessing the reliability of a
statement made by an alleged child victim of sexual abuse: (1) a spontaneity and consistent
repetition of the statement; (2) the mental state of the declarant; (3) the use of terminology
unexpected of a child of similar age; and (4) the lack of motive to fabricate. Id. at 821-22, 110 S.Ct.
at 3139, 111 L.Ed.2d at 638. The Texas Court of Criminal Appeals has added several additional
(and nonexclusive) factors: (1) the giving of an age-appropriate oath before the statement is made;
(2) the presence of the defendant during the interview; (3) the presence of the child’s parent during
the interview; (4) the relationship of the declarant to the interviewer; (5) the length of time between
the child’s first outcry and the making of the statement; (6) the quality of the tape; (7) the method
by which the interview is conducted, including whether questions are leading; and (8) whether
written interrogatories are submitted from the defendant. Smith v. State, 61 S.W.3d 409, 412
(Tex.Crim.App. 2001)..
            After S.R.’s outcry, she was taken to Harmony Home and interviewed by Eve Flores. The
interview was conducted in a professional manner, and S.R. seemed at ease with Flores. While
Flores used a few leading questions, S.R. answered freely, describing what Appellant had done and
demonstrating those actions using anatomically correct dolls. She described the sexual acts with
detail not expected from a seven-year-old. Her use of the term “deep throat” was unusual for a child
her age. Her testimony was more spontaneous than rehearsed. S.R.’s demeanor and behavior
indicated that she was an active, talkative seven-year-old. She appeared relaxed and cooperated with
Flores during the interview. At times, Flores would have to get her back on track when she lost
focus. At the end of the interview, Flores left the child alone in the room, and she played with the
dolls.
            Appellant is S.R.’s biological father and there was no indication of any animosity toward
him. The absence of any motivation for the child to fabricate such a story tends to indicate the
statement was truthful. There was evidence, however, of Sandra’s motivation to encourage a
fabrication and the opportunity to coach the child’s answers to questioning. And we recognize that
claims of sexual abuse surface frequently as strategic tools in custody litigation. But S.R. knew the
difference between the truth and a lie. Flores presented two examples to test her knowledge of the
difference and S.R. agreed to tell the truth. This supports the reliability of her statement although
she was not told the consequences of telling a lie. And at trial, even defense counsel admitted that
a sufficient admonishment had been given on the video. 
             Appellant was not present during the interview. While his absence is a serious factor, it
must be weighed against all other indicia of reliability and viewed within the totality of the
circumstances. The record does not indicate that S.R. had any prior relationship with Flores and thus
had no reason to try to please her. The lack of such a relationship lends additional credibility to
S.R.’s statement. S.R. made her outcry at the end of June 2002. The initial report was made on July
8, 2002, and the interview was conducted on July 10. There was a limited time for S.R. to refine her
story or to have contacts that might affect the nature of her story. 
            The picture quality of the videotape is good, clearly showing both Flores and S.R. during the
interview. While the audio portion of the tape is difficult at times to hear, the volume can be turned
up, and the voices can be heard and readily identified, a fact defense counsel admitted. Examining
all of these factors and considering the totality of the circumstances, we conclude that S.R.’s
statement was sufficiently reliable. 
Conclusion
            The jury had the opportunity to consider the child’s statement, her subsequent cross- examination, her ready access to sexual conduct from other sources, and the possibility that looming
custody litigation triggered her outcry. While the evidence is conflicting, we cannot conclude that
the evidence contrary to guilt is so strong that the beyond-a-reasonable-doubt standard was not met. 
Finding the evidence to be both legally and factually sufficient, we overrule Point of Error One. 
UNAVAILABILITY OF WITNESS
            In Point of Error Two, Appellant contends that the videotape should not have been admitted
because the State failed to show that S.R. was unavailable to testify. We review the trial court’s
ruling for abuse of discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). We
will afford almost total deference to a trial court’s determination of historical facts that the record
supports, especially when the findings are based on the evaluation of credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The fact finder is the sole judge of the
witnesses’ credibility and may accept or reject any or all of the witnesses’ testimony. In reviewing
a ruling on a question of application of law to facts, we review the evidence in the light most
favorable to the trial court’s ruling. Guzman, 955 S.W.2d at 89.
Texas Code of Criminal Procedure Article 38.071
            Article 38.071 provides for alternative forms of testimony for child victims of sexual abuse. 
Specifically, Section 2(a) states:
The recording of an oral statement of the child made before the indictment is returned
or the complaint has been filed is admissible into evidence if the court makes a
determination that the factual issues of identity or actual occurrence were fully and
fairly inquired into in a detached manner by a neutral individual experienced in child
abuse cases that seeks to find the truth of the matter. 

Tex.Code Crim.Proc.Ann. art. 38.071, § 2(a). Section 8 provides the following non-exclusive
factors to aid the trial court in its determination of unavailability: (1) relationship of the defendant
to the child, (2) the character and duration of the alleged offense, (3) the age, maturity, and emotional
stability of the child, (4) the time elapsed since the alleged offense, and (5) whether the child is more
likely than not to be unavailable to testify because of emotional or physical causes, including
confrontation with the defendant; or the child would suffer undue psychological harm through his
involvement at the hearing or proceeding. Tex.Code Crim.Proc.Ann. art. 38.071, § 8(a). 
Evidence Presented
            The trial court conducted a hearing before determining the child’s unavailability. Connie
Aguirre from the Ector County District Attorney’s Office victim assistance program testified that
S.R. was very distressed, teary, scared, and did not want to be in the same room with Appellant. 
Aguirre talked to S.R. and explained to her about going into the courtroom. S.R. asked Aguirre to
take her to the restroom. When they headed out of the office, S.R. grabbed Aguirre’s leg and started
crying that she did not want to go since the Appellant was standing there. Aguirre believed that
S.R.’s fear was sincere. When they were in the hallway, S.R. talked to a security guard. She told
the guard that she was afraid someone was going to hurt her. The guard reassured her that he would
be right there with her and that no one would hurt her, but S.R. persisted that she did not want to go
in the courtroom, that she would not go, and that she was scared. S.R. knew Appellant would be in
the courtroom since she had seen him in the hallway. 
            Cindy Trifon, a Harmony Home therapist, testified that S.R. had improved with their weekly
therapy sessions. Initially, S.R. was having behavior problems at school and home. Trifon did not
find it surprising that S.R. would not want to go into the courtroom since many times children do not
want to have to face their perpetrator or speak in front of other people. Trifon did not find it odd that
S.R. had taken the stand the week before and was fine while answering innocuous questions, but
“froze up” when questioned about the subject of the trial. Trifon recommended that psychologist
David Koch advise the judge on the availability of the child. Trifon believed that S.R. behaved
appropriately for her age. 
            After hearing testimony, the trial court made the following statement:
After listening to both counsel and the evidence before me, I do feel that
under the test outlined in Section 8 of 38.071, that for the State’s purposes of
presenting its evidence, that the child is an unavailable witness.
 
I have taken into consideration the relationship of the Defendant to the child,
the character and duration of the alleged offenses as they have been outlined
in the indictment. Age and emotional stability of the child for the purposes
of this proceeding, as well as the time elapsed since the alleged defense.

The court then allowed the defense to cross-examine S.R. outside the presence of Appellant at
Harmony Home. 
Analysis
            . Relying on Bousquet v. State, 47 S.W.3d 131 (Tex.App.--Houston [1st Dist.] 2001, pet.
ref’d), Appellant argues that the State failed to make a sufficient showing of unavailability. There,
the victim’s uncle testified that the victim had been living with him in Colorado for four months and
that his behavior had improved dramatically. Returning to Texas would be highly detrimental to his
emotional progress. Id. at 135. The victim did not want to come back because he feared the
defendant--his father. Id. Although he missed his mother, he was able to compensate for the loss by
living with family in a home environment. Id. A CPS case worker also testified that the victim was
frightened of the defendant. Id. The court found that the evidence did not provide a sufficient basis
to conclude the victim was unavailable. Id. at 136. The factors influencing the court’s decision
included the child’s age at the time of trial (he was twelve), the fact that the alleged sexual assault
consisted of a single touching occurring three years before trial, and the absence of testimony from
a child care expert regarding the victim’s psychological state of mind at or near the time of trial. Id. 
Despite the uncle’s testimony that the boy was reluctant to come back to Texas and that he would
be harmed by doing so, he was actually in town and at the district attorney’s office at the time. This
afforded the trial judge an opportunity to directly question the boy regarding his reluctance to testify,
but she did not do so. Id. 
            Here, the trial court heard testimony that S.R. was eight at the time of trial. The alleged
offenses occurred over a period of a year and a half and involved the penetration of her anus and
mouth. She. was distressed and scared and did not want to be in the same room with Appellant. She
grabbed Aguirre’s leg and cried because she did not want to see Appellant. She told the security
guard that she was afraid someone would hurt her and she did not want to go into the courtroom. 
            We find no abuse of discretion in the trial court’s determination that the child was
unavailable to testify. We overrule Point of Error Two. Having overruled both issues for review,
we affirm the judgment of the trial court.

May 19, 2005                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)