In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00215-CR


______________________________




BRANDI EDWARDS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 20023




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 Brandi Edwards appeals from her conviction by a jury for the offense of aggravated sexual
assault of a child. The jury assessed punishment at forty years' imprisonment and a $10,000.00 fine.

 Edwards contends that the trial court erred by admitting the child's videotaped statement into
evidence, that the statute permitting the admission of such evidence is unconstitutional, that the
State's experts were improperly permitted to provide opinion testimony about the perceived
truthfulness of the child, and that the admission of testimony by the sexual assault nurse examiner
about statements made by the child was violative of her right of confrontation. Edwards also
contends that the cumulative effect of all of these errors denied her right to due process under the
Constitution and that the evidence is legally and factually insufficient to support the verdict.

 School officials observed this five-year-old child "acting out" in a sexual fashion. A school
counselor spoke to her, and the child described having sexual encounters. A report was made to
Child Protective Services and Michelle Griffith, the coordinator and forensic interviewer for Fannin
County Child Advocacy Center, conducted a videotaped interview of the child. In the interview, the
child discussed sexual conduct with her mother. The child was later examined by a nurse at a
hospital. 

I. Article 38.071 - Admission of Videotape

 We first address Edwards' contention that the videotape of the interview with the child was
improperly admitted into evidence. Edwards' argument is based on her contention that the statement
was inadmissible because the State never moved the trial court to declare the child unavailable, no
hearing was held on that matter, and the State never presented evidence to show the child was
unavailable. She argues that, because there was no specific finding the child was unavailable to
testify in the presence of Edwards, the trial court violated the Sixth and Fourteenth Amendments to
the United States Constitution and Article 38.071, Section 1 of the Texas Code of Criminal
Procedure. See U.S. Const. amends. VI, XIV; Tex. Code Crim. Proc. Ann. art. 38.071, § 1
(Vernon Supp. 2003). 

 The child did not testify in open court, but the videotaped interview that was conducted with
her before the indictment was presented to the jury. Counsel objected on grounds including hearsay,
denial of the right of confrontation, and the unavailability issue. The objections were overruled.

 Edwards contends there is no evidence to support a conclusion the child was unavailable. 
She argues that, in the absence of such evidence, the necessary precursor to admission of the
videotape was not met and that the trial court therefore erred in admitting it into evidence. 

 The court's determination that a child is unavailable is the preliminary step that must be met
in order to satisfy the requirements of Tex. Code Crim. Proc. Ann. art. 38.071 (Vernon Supp.
2003). See Lively v. State, 968 S.W.2d 363, 366-67 (Tex. Crim. App. 1998). The statute requires
that, before such an interview may be used, the court must determine the child is unavailable based
on proper reasons, including the factors set out by Article 38.071, Section 8 of the Texas Code of
Criminal Procedure. The law has recognized that children who are victims of crimes may in some
instances be so traumatized by testifying in open court in the presence of the accused that an
accommodation should be made. Section 8 of the statute provides guidelines and factors for the trial
court to consider in making a determination of unavailability.

 The Texas statute attempts to address and recognize the importance of the right to confront
witnesses and balance it with the possible trauma imposed on a child attempting to testify in the
presence of a defendant. Article 38.071 allows evidence of statements made by a child victim in
settings outside the traditional in-court procedure, under limited circumstances. Article 38.071,
Section 1 explicitly states that the article applies to a proceeding in which the court determines a
child would be unavailable to testify in the presence of the defendant. Section 2(a) of the Texas
Code of Criminal Procedure then allows the recording of an oral statement of the child to be
admitted if the court makes specified determinations. Thus, as a preliminary matter, the statute
requires the trial court to determine the child is unavailable before the statements obtained out of
court may be used. Without evidence of this nature and a review of such evidence by the trial court,
a preliminary step made necessary by the statute has not been taken, and the out-of-court testimony
is inadmissible. 

 The Texas statute (1) expresses the concept that a child may be "unavailable" to testify in open
court in certain circumstances. It mandates that the entire article applies only to a hearing in which
the court determines the child is unavailable. It sets out the type of evidence that must be considered
by the trial court: the relationship of the child and the defendant, the alleged offense, age, maturity,
and emotional stability of the child, and the time elapsed since the offense. 

 It further allows the court to consider the emotional or physical effect on the child
confronting the defendant and whether the child would suffer undue psychological harm by testifying
at the trial. After the court considers all these matters, it would be able to make a decision. In this
case, no hearing was conducted on this issue and no evidence was introduced for the trial court to
consider. 

 In reviewing the trial court's implied finding of unavailability, we look to see whether the trial
court abused its discretion in making that determination. See Marx v. State, 987 S.W.2d 577, 580-81
(Tex. Crim. App. 1999). We will not reverse a trial court whose ruling was within the zone of
reasonable disagreement. Green v. State, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996); Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

 In this case, the court admitted the videotaped interview with the child without any evidence
to reflect the child was unavailable to testify. In so doing, it allowed evidence into the record in
violation of the Texas statute. The ruling of the trial court is therefore outside the zone of reasonable
disagreement. The State has not made the required adequate showing that the child was unavailable. 
See Tex. Code Crim. Proc. Ann. art. 38.07, § 1. In the absence of the required showing that the
child was unavailable, we conclude the trial court abused its discretion by admitting the evidence.

 We have concluded that the admission of this statement clearly violated Article 38.071 of
the Texas Code of Criminal Procedure. Therefore, our analysis of harm is governed by Tex. R. App.
P. 42.(b). Under that analysis, we disregard the error if it does not affect Edwards' substantial rights.

 Substantial rights are not affected by the erroneous admission of evidence if the appellate
court, after examining the record as a whole, has fair assurance the error did not influence the jury,
or had but a slight effect. Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). 

 The videotaped statement of the child is described in detail in Section III. Other evidence
damaging to Edwards was the outcry witness, who testified the child told her she had sex with her
mother; a teacher's aide, who testified the child "acted out" in a sexual manner in class; the nurse
who examined the child; and experts explaining the child's actions on the videotape.

 The videotape sets out the actions of Edwards in a manner that does not appear elsewhere
in the evidence. Specifically, the child not only identifies Edwards as the perpetrator, but graphically
demonstrated on several occasions to the interviewer how such sexual activity occurred with her
mother. We believe that such evidence from the victim was extremely significant. We cannot say
with fair assurance that the error in admitting this tape into evidence did not influence the jury or had
but a slight effect.

 As we are remanding this case for further proceedings, we will discuss other issues raised
by Edwards, even though they are not necessary for the disposition of this appeal. 


II. Confrontation Clause - Admission of Videotape

 This out-of-court statement implicates the Confrontation Clause. U.S. Const. amend. VI. 
In Idaho v. Wright, 497 U.S. 805 (1990), the United States Supreme Court recognized the difference
between situations where a child who testifies at trial may be subjected to cross-examination and
those where a child's out-of-court statements are admitted as evidence. (2) In its opinion, the Court
discussed the long-standing rationales for allowing admission of hearsay statements against a
defendant in a criminal proceeding, even though admission would otherwise violate the literal terms
of the Confrontation Clause. Id. at 813.

 Later, in White v. Illinois, 502 U.S. 346, 356 (1992), the United States Supreme Court
explained that the procedures constitutionally required under the Confrontation Clause when a
witness has testified in open court are different from the requirements the Confrontation Clause
imposes as a predicate for the introduction of out-of-court declarations. (3) In this case, we have out-of-court declarations.

 The Texas Court of Criminal Appeals has directed that the analysis in a case of this nature
be in accordance with Idaho v. Wright. See Smith v. State, 61 S.W.3d 409 (Tex. Crim. App. 2001).

 Under Wright, the court is to examine whether the videotape has a sufficient indicia of
reliability. This can be shown either by demonstrating that the statement falls within a "firmly
rooted" hearsay exception or that it is supported by "particularized guarantees of trustworthiness." 
Smith, 61 S.W.3d at 412. After the remand in the Smith case, the Tyler Court of Appeals reviewed
an out-of-court statement offered under Article 38.071 similar to the statement in this case. After
a thorough analysis, the court held that Article 38.071 was not a hearsay exception that is firmly
rooted in our jurisprudence. Therefore, the court analyzed the statement under the "particularized
guarantee of trustworthiness" rubric to determine reliability. 

 In this case, we have held that the introduction of the child's statement violated the Texas
statute. We now consider whether it likewise violated the United States Confrontation Clause by
examining the "indicia of reliability" of the statement. We agree with the analysis and conclusion
of the Tyler Court of Appeals that Article 38.071 is not a firmly rooted hearsay exception. The
statute is of relative recent origin and cannot be considered firmly rooted. We turn to the question
of whether the State rebutted the presumption of inadmissibility by showing such statement to have
such particular guarantees of trustworthiness to establish reliability.

 In Wright, the Supreme Court identified several factors to be applied in assessing the
reliability of a statement made by an alleged child victim of sexual abuse. Those factors include: 
(1) a spontaneity and consistent repetition of the statement; (2) the mental state of the declarant; (3)
the use of terminology unexpected of a child of similar age; and (4) the lack of motive to fabricate. 
Wright, 497 U.S. at 821-22. In Smith v. State, the Texas Court of Criminal Appeals directed that
several additional (and nonexclusive) factors be considered, including: (1) the giving of an
age-appropriate oath before the statement is made; (2) the presence of the defendant during the
interview; (3) the presence of the child's parent during the interview; (4) the relationship of the
declarant to the interviewer; (5) the length of time between the child's first outcry and the making
of the statement; (6) the quality of the tape; (7) the method by which the interview is conducted,
including whether questions are leading; and (8) whether written interrogatories are submitted from
the defendant. Smith, 61 S.W.3d at 412.

 We have carefully reviewed the videotape and examined these factors as follows: 

A. The Spontaneity and Consistency of the Statement 

 After the outcry, the child was taken to the Fannin County Child Advocacy Center for an
interview by Michelle Griffith, the coordinator and forensic interviewer. Griffith appeared to
conduct the interview with nonleading questions. As Griffith was having the child identify body
parts, she began to refer to her mother's statements and actions, such as, "mom says sexy." The child
on several occasions attempted to demonstrate sexual acts to Griffith. After the child mentioned her
mom, Griffith asked, "What does your mom do?" and the child replied, "nasty stuff." The child then
again tried to demonstrate. 

 Throughout the interview, the child was very expressive and talkative. At all times, she
stated that the only person who did "nasty stuff" and "touches me" was her mom. In many instances,
the child volunteered more information than was requested in the questions. The statements made
in the interview are not inconsistent with those made to the outcry witness and nurse. We find the
statement exhibited a high degree of spontaneity and was consistent with other statements the child
made.

B. Mental State of the Declarant

 In the interview with Griffith, the child identified her school, teacher, and the names of all
persons with whom she lived, including her dog, Rascal. On the videotape, the demeanor of the
child was that expected of a five-year-old. She moved around the room and stood up on several
occasions, and indicated she would rather play with nearby toys. Overall, she appeared relaxed and
cooperative, with the usual movement that would normally accompany a child of her age. It was
obvious from the many references by the child that she did not understand the gravity of the conduct
she described. The interview reveals the candor of a five-year-old child explaining sexual acts,
without comprehending the seriousness of such activity.

C. Use of Terminology Unexpected of a Child of Similar Age

 The child did use sexual terminology not expected of a five-year-old. However, what clearly
is evident on the videotape is the child's belief that such activity was not abnormal. On many
occasions, she requested that Griffith allow her to graphically demonstrate sexual acts. On some of
the occasions, the child in fact demonstrated such acts. She clearly showed Griffith her position in
relationship to Edwards during sexual activity. Her terminology, and more importantly, her
demonstration of the way in which the sexual acts occurred, far exceed that knowledge which a
five-year-old child would normally possess.

D. Lack of Motive to Fabricate

 The defendant in this case is the child's mother. There is no indication in the testimony that
the child feels any animosity toward her mother. She did mention during the interview that she did
not like another member of the family. The absence of any motivation for the child to fabricate such
a story as to her own mother indicates that such statement was truthful.

E. The Giving of an Age-Appropriate Oath

 Before inquiring of the child concerning any issue involved, Griffith clearly explained to the
child they were in the "truth room." She explained to the child it was important to tell only what
really happened and then asked the child if she knew what happened if she should lie. The child
answered that you get a "whooping" (whipping) if you tell a lie. Griffith clearly brought to the
child's attention the need to be honest in the interview, and the child acknowledged she understood
the consequences of lying. This supports the reliability of her statement.

F. Presence of the Defendant at the Interview

 In this instance, the defendant is the mother. The defendant was not present during the
interview. While we agree the absence of the defendant is a serious factor to be considered, it must
be weighed against all other indicia of reliability of such statement when viewed in the totality of
the circumstances.

G. Relationship of the Declarant to the Interviewer

 The record does not indicate the child had any prior relationship with Griffith. From all
appearances on the videotape, they were strangers before this interview. It does not appear the child
had any reason to try to "please" Griffith. The absence of such a relationship lends additional
credibility to the child's statement.

H. Length of Time Between First Outcry and Making a Statement

 The outcry witness testified the initial contact occurred on January 31, 2001. It appears the
videotaped interview was conducted by Griffith that same day. This would indicate that virtually
no opportunity could exist for the child to refine her story or to have extensive contacts that might
affect the nature of that story. Accordingly, this weighs in favor of admission.

I. The Quality of the Tape

 The videotape clearly shows both Griffith and the child at all times during the interview. 
Furthermore, the audio portion of the videotape is clear. The voices can be heard and identified
readily. The activity of the child during the interview is fully documented. The videotape is of high
quality.



J. Submission of Written Interrogatories

 On September 21, the State filed a notice of intention to use the videotaped statement. Voir
dire began on October 22. Defense counsel stated at voir dire she would submit written
interrogatories to be videotaped and submitted to the jury along with the statement, but later decided
not to do so. No interrogatories were submitted. 

K. Manner in which the Interview was Conducted

 The interview appeared to be conducted in a professional manner. Griffith began by asking
the child simple questions, such as where she went to school, who was her teacher, the names of her
family and dog. The child seemed to be placed at ease. As we have discussed, Griffith properly
admonished the child of the necessity of telling the truth. As the child lost focus, Griffith would
remind the child they needed to continue their talk, and she would again become reasonably
attentive. The demeanor and behavior of the child indicated she was an active, talkative
five-year-old. Griffith continually told the child that whatever she said would not get her in trouble. 
Even though the child on several occasions indicated she wanted to demonstrate sexual acts with
Griffith, Griffith reminded the child she needed only to explain such acts. The entire interview lasted
approximately forty-five minutes. At the conclusion of the interview, Griffith left the child alone
in the room for a few minutes while the videotape was operating. The child drew on the blackboard
and appeared at ease.

 For the reasons we have analyzed above, we conclude that, based on the totality of the
circumstances, and in particular the factors to consider for a "particularized guarantee of
trustworthiness," the child's statement is sufficiently reliable to allow the admissibility of this
videotape without violation of the Confrontation Clause. Specifically, we find that the factors
supporting the reliability of the statement clearly outweigh those that do not. We therefore conclude
constitutional error has not been shown.

III. Expert Witness Testimony

 Edwards asserts the trial court erred in admitting expert testimony of Ed Wagoner and Loretta
McCarty. Edwards complains such testimony constituted an improper opinion as to the truthfulness
and veracity of the child.

 Ed Wagoner, a former Child Protective Services worker, was asked:

 Q. After you received an outcry for sexual abuse, what factors did you
look at to determine -- what factors would you look at to determine if a child was
telling the truth?


 In answering the question, the witness stated that the factors were the age, level of
development, what a child would typically know about sexuality at that point in time, appropriate
sexual knowledge, opportunity, and access to the defendant.

 Thereafter, Wagoner was asked, "How does [the victim] -- what you saw on the tape, how
does that - how does her testimony on the tape fit into what those factors are?" The witness then
answered that the child exhibited a great deal of knowledge about sexual activity and that she was
able to identify inappropriate sexual activity and describe it as being nasty. Wagoner also pointed
out she was able to describe in detail what had happened to her.

 Later, McCarty was asked, "How does [the victim] -- in your criteria how does she -- what
factors that you see in that tape that indicate that she would be truthful type factors? [Objections.]
. . . . Q. Now, you understand I'm not asking you whether she's telling the truth. I'm asking are there
factors that you see there that indicate to you there's some truthfulness to what she's saying." The
answer consisted of McCarty's explanation of gestures and demonstrations by the child on the tape,
of her unusual behavior in trying to encourage Griffith to participate with her in a sexual
demonstration, of her actions clearly describing and demonstrating on a couch what happened to her
and of knowing it felt good.

 An expert witness may not testify that a witness is truthful, but an expert may testify that the
child exhibits symptoms consistent with sexual abuse.  Cohn v. State, 849 S.W.2d 817, 819 (Tex.
Crim. App. 1993). The witness may not "cross the line" and testify directly as to the victim's
truthfulness, as it does not concern a subject matter on which the testimony of an expert witness
could assist the trier of fact. Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993). 

 To be admissible, expert testimony must "assist" the trier of fact. Tex. R. Evid. 702; Duckett
v. State, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990). Expert testimony assists the trier of fact
when the jury is not qualified to "the best possible degree" to determine intelligently the particular
issue without the help of the testimony. Duckett, 797 S.W.2d at 914. But, the expert testimony must
aid--not supplant--the jury's decision. Id. Expert testimony does not assist the jury if it constitutes
"a direct opinion on the truthfulness" of a child complainant's allegations. Yount, 872 S.W.2d at 708.

 The evidence here does more than describe characteristics common among sexually abused
children. Wagoner was asked about factors to determine if a child was "telling the truth." After
describing the factors for truthfulness, the witness was asked, "How does [the victim] fit . . . into
what those factors are?" The witness then testified she exhibited such factors. McCarty likewise
testified over objection as to factors that indicated to her the child exhibited some indicia of
truthfulness in the interview.

 The witnesses here were asked to comment directly on factors to determine if the child was
telling the truth. These observations, such as age, level of development, sexual knowledge,
opportunity, and access, may all be judged and determined by a jury without the help of an expert.

 We find that the testimony regarding the factors for truthfulness observed by the experts
directly comment as to the truthfulness of the child. As such, it does not assist the jury and is
inadmissible. Tex. R. Evid. 702.

IV. Medical History Testimony

 Edwards further urges that the trial court erred by allowing the testimony of Geri Lawson,
the sexual assault nurse examiner, concerning statements the child made to her during a medical
examination.

 The evidence shows the child was taken to the nurse for a medical examination at the
hospital. Rule 803(4) of the Texas Rules of Evidence provides an exception to the hearsay rule for
"statements made for purposes of medical diagnosis or treatment and describing medical history, or
past or present symptoms, pain, or sensations, or the inception or general character of the cause or
external source thereof insofar as reasonably pertinent to diagnosis or treatment." Tex. R. Evid.
803(4); Mendoza v. State, 69 S.W.3d 628, 633 (Tex. App.-Corpus Christi 2002, pet. ref'd); Beheler
v. State, 3 S.W.3d 182, 188 (Tex. App.-Fort Worth 1999, pet. ref'd); Torres v. State, 807 S.W.2d
884, 886-87 (Tex. App.-Corpus Christi 1991, pet. ref'd) (finding emergency room nurse could testify
as to victim's statement under Rule 803(4) even though nurse was also collecting evidence). 

 Edwards challenges this evidence on the basis that it violates her right of confrontation under
the Sixth Amendment to the United States Constitution. She cites Lopez v. State, 18 S.W.3d 220
(Tex. Crim. App. 2000), for the proposition that the Confrontation Clause will prevail if there is a
conflict between it and the Rules of Evidence. In Lopez, the defendant was attempting to present
evidence that the victim had previously made false accusations of sexual assault against other
individuals. The State objected under Rule 608(b) of the Texas Rules of Evidence. The issue was
whether the Confrontation Clause demanded that the evidence of the complainant's prior false
allegations of abuse against a person other than the defendant was admissible despite Rule 608(b)'s
proscription against admitting specific instances of conduct. Id. at 222-23. The Texas Court of
Criminal Appeals stated that "the Confrontation Clause occasionally may require the admissibility
of evidence that the Rules of Evidence would exclude." Id. at 225. The final conclusion of the court
was that such evidence was inadmissible and the Confrontation Clause did not mandate its
admissibility. Id. at 226.

 In this case, Edwards is arguing for the exclusion of evidence rather than its admissibility,
as in Lopez.

 As we have previously discussed, not all out-of-court statements are prohibited by the
Confrontation Clause. Wright, 497 U.S. 805. If the statement does fall within a firmly rooted
hearsay exception, then reliability can be inferred without more. There is no doubt the exception for
statements made for purposes of medical diagnosis or treatment is firmly rooted. White, 502 U.S.
at 356 n.8; United States v. Sumner, 204 F.3d 1182 (8th Cir. 2000).

 As the medical diagnosis hearsay exception is well established as a firmly rooted exception
to the hearsay rule, admission of this evidence does not violate the Confrontation Clause of the Sixth
Amendment to the United States Constitution. The testimony of the sexual assault nurse examiner
was properly admitted.





 We reverse the judgment and remand the cause to the trial court for further proceedings
consistent with this opinion.




 Jack Carter

 Justice


Date Submitted: March 26, 2003

Date Decided: April 22, 2003


Publish






OPINION ON MOTION FOR REHEARING

 The State urges this Court to remand the case to the trial court for a hearing on the
unavailability of the child complainant and to reconsider our finding that the expert witness
testimony was inadmissible or, alternatively, to conduct a harm analysis concerning the expert
witness testimony.

 The State cites the cases of Hightower v. State, 822 S.W.2d 48 (Tex. Crim. App. 1991), and
Driggers v. State, 940 S.W.2d 699 (Tex. App.-Texarkana 1996, pet. ref'd), in support of its motion
to remand to the trial court for a hearing on the issue of the unavailability of the child complainant
to testify.

 In Hightower, the issue was whether the trial court had complied with the constitutional
requirements of Maryland v. Craig, 497 U.S. 836 (1990), requiring a court to hear evidence and
make specific findings to authorize closed-circuit television testimony by a child. The Texas Court
of Criminal Appeals stated the trial court had not complied with these requirements, but also noted
the trial court did not have the benefit of the Craig opinion before it proceeded.  Hightower, 822
S.W.2d at 51. Therefore, the Texas Court of Criminal Appeals abated the appeal and authorized the
trial court to conduct such a hearing and enter findings and conclusions.

 In Driggers, the trial court had conducted an evidentiary hearing to determine whether to
allow closed-circuit testimony of a child. The trial court granted the motion. This Court concluded
such oral finding by the court was inadequate and abated the case for more specific findings.

 We find those two cases altogether different from the case at bar. Unlike Hightower, the law
did not change in this case after trial. The statutory requirement for the court to make a
determination of unavailability of a child before allowing an alternate method for the child's
testimony has been in effect in this state for many years. This statutory requirement has not been
fulfilled, and the trial court abused its discretion by admitting evidence without complying with the
statute.

 In Driggers, the trial court had conducted an evidentiary hearing and made a determination. 
This is also different from the present case, where no evidence was presented to the court and no
hearing was conducted. Here, there is nothing on which to base a determination by the trial court
that the child was unavailable.

 As we do not believe it is appropriate at this late date to abate this appeal, it is unnecessary
to conduct a harm analysis concerning the expert testimony. We have specified the inadmissible
portions of the testimony of the expert witnesses to assist in any further proceedings.

 The State's motion for rehearing is denied.




 Jack Carter

 Justice


Date: May 14, 2003


Publish
1. Tex. Code Crim. Proc. Ann. art. 38.071 (Vernon Supp. 2003).
2. In Idaho v. Wright, the Court determined that it was appropriate to apply the same analysis
to such evidence as to other types of hearsay and applied the "indicia of reliability" requirement to
determine whether a firmly rooted hearsay exception allowed its admission, or alternatively, if the
evidence was supported by a showing of particularized guarantees of trustworthiness. 497 U.S. 805,
816 (1990).
3. The analysis of procedures for in-court testimony such as closed circuit television should
be conducted in accordance with Maryland v. Craig, 497 U.S. 836, 845 (1990), and Coy v. Iowa, 487
U.S. 1012, 1019 (1988), requiring the witness to be unavailable to authorize such modified in-court
testimony; whereas, in White v. Illinois, the court determined it is not necessary to prove a child
needs protection of his or her physical or psychological well-being as a prerequisite to introducing
statements the child made out of court. 502 U.S. 346, 358-59 (1992).