In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00063-CR
______________________________


STANLEY MARK PARSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 20515


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Stanley Mark Parson appeals from his conviction by a jury for aggravated assault
with a deadly weapon.


 The jury found that Parson had been previously convicted of two
felony offenses and set his punishment at ninety-nine years' imprisonment. 
          Parson appeals, contending the trial court erred: 1) by admitting into evidence the
victims' prior inconsistent statements when the victims recanted those statements at trial;
2) by improperly admitting evidence of extraneous offenses at both the guilt/innocence and
punishment phases of the trial; 3) by admitting opinion testimony from a licensed
professional counselor that the alleged victims, Parson's wife and stepson, suffered from
"battered woman's syndrome"; and 4) by several mistakes in the court's charge to the jury. 
Parson also contends the evidence is factually and legally insufficient to support his
conviction on one count involving his wife because there was no evidence he caused her
bodily injury or that he used a deadly weapon. We affirm.
Background
          The evidence shows that, while Parson was drinking himself into a near stupor at
his home, his wife, Waynell Parson, and his sixteen-year-old stepson, Richard Havner,
went next door to the home of Waynell's 


 sister-in-law, Terry McCloud. Parson telephoned
next door and told Waynell and her son to return home. They did, and an argument
ensued between Parson and Waynell, which escalated when Waynell and Havner tried to
leave once more. There is evidence that Havner exited the house, but when Waynell
attempted to leave, Parson got a gun and pushed Waynell back into the house, injuring her
in the process. There are also statements in evidence made by Waynell and Havner that
Parson pointed the gun at them and threatened them. The evidence further shows that
Waynell and Havner managed to retreat to McCloud's house, where an emergency call
was placed to the Lamar County sheriff's office. When officers arrived, they spent over two
hours attempting to locate Parson. They finally found him behind his house, beside a small
chicken coop and under a bush, unconscious, and with two rifles nearby. 
          At trial, Waynell and Havner recanted their prior statements to the officers and
recanted their grand jury testimony, and testified Parson never actually pointed a weapon
at them. Parson was convicted of aggravated assault by pushing Waynell into a door while
using a deadly weapon. He was also found guilty of aggravated assault by threatening
Waynell while pointing a deadly weapon at her. In the other case, the jury found Parson
guilty of aggravated assault by threatening Havner with imminent bodily injury while using
a deadly weapon. 
 
Prior Inconsistent Statements
          Parson first contends the court erred by admitting Havner's statements into
evidence. Parson objected to the admission of the exhibits based on hearsay and because
the witness admitted in court he had made the prior statements. 
          Rule 613 of the Rules of Evidence provides that a prior inconsistent statement of
a witness is admissible for impeachment of the witness. Tex. R. Evid. 613. However, the
rule also explicitly states that the extrinsic evidence of the statement itself is only
admissible if the witness refuses to admit making the statement. This is not merely a
refusal to admit making a statement, but refusing to admit making the contents of the
statement. See McGary v. State, 750 S.W.2d 782, 786 n.3 (Tex. Crim. App. 1988); Staley
v. State, 888 S.W.2d 45, 49 (Tex. App.—Tyler 1994, no pet.). The courts reason that,
when a defendant admits making the statement, it is unnecessary to admit the document
itself because the witness impeaches himself or herself. McGary, 750 S.W.2d at 786. 
          In this case, Havner testified that Parson never threatened him with the gun, but
admitted he had made a previous written statement that said otherwise. He was asked:
Q.Did he ever threaten you with that gun?
A.No, sir.
Q.Have you ever testified or had a statement that says otherwise?
A.Yes, sir. 
          A written statement was given to Parson to read silently. After he read the
statement, he admitted that he signed it voluntarily. He then testified: 
Q.You testified today that he didn't threaten you?
A.Yes, sir.
Q.Did you previously make a statement that he did threaten you?
A.Yes, sir.
Q.Is the statement true, or is what you're telling today true?
A.What I'm telling today. 
The State then offered the statement as an exhibit. Over objection, the court admitted the
exhibit.
          Havner was then questioned at trial about the testimony he had given before the
grand jury. In that testimony he had said his statement was true and correct, and then
testified regarding what had happened on the occasion in question. Havner testified at trial
that what he had told the grand jury was not true. Over objection, the State also introduced
three exhibits, consisting of three pages of the proceedings before the grand jury. 
          After the written statement was introduced into evidence, the State questioned
Havner about the way the statement was taken and about the witnesses thereto (his
mother, his aunt, and his sister), whose signatures were on the documents. 
 
 
          The State's counsel asked Havner:
Q.You told those three people that he put this gun up, pointed it
at somebody and threatened to shoot.
 
A.Yes, sir.
 
Q.And that's true?
 
A.No, sir.
 
Q.So today you've got a different story?
 
A.I didn't see him point the gun at anybody.
 
Q.According to this: "He came at us with his gun, saying stop or
I'll shoot you. Then he pushed my mom into the door." 
 
A.I didn't see it.
 
Q.Did he say stop or I'll shoot you?
 
A.No, sir.
 
Q.Have you ever testified other – other than just the statement,
have you ever testified differently to that?
 
A.Yes, sir.

          The State then had Havner read approximately fifteen lines of his grand jury
testimony in which (among other things) Havner identified the weapon and stated that
Parson had pointed it at him and his mother, that Parson had threatened to shoot them if
they continued to try to leave the house, and that he had the gun on his shoulder like he
was going to fire it. The State then asked a series of questions designed to point out, with
no possibility for evasion, that Havner had given a statement and testified in one way
before a grand jury, and was now testifying to the contrary on two particular (but critical)
points: whether Parson pointed the gun at them and whether he threatened them. 
          The issue is whether, in light of the fact that Havner admitted making the
statements, the trial court erred by initially admitting the documents into evidence. Under
the plain language of the rule, the court erred. For example, as described in McGary, when
the witness admits making the statement, but on questioning denies portions of the
statement, the portion that contradicts the witness may be proven for impeachment. 
McGary, 750 S.W.2d at 787. However, when the witness unequivocally admits making the
prior statements, "the instrument itself is not admissible, but the examining attorney may
ask about specific sentences, remarks, or things in the prior statement." Id. In that case,
the court ultimately held that the admission of the entire statement was error and that the
reading of the statement to the jury was improper impeachment. The court recognized
that the state also used the evidence as proof of the offense, and so argued to the jury. 
Under the former harmless error standard of review, the court reversed because it could
not conclude the improper impeachment was harmless beyond a reasonable doubt. Id.
at 788; Staley, 888 S.W.2d at 49.
          In this case, Havner unequivocally admitted making the statements and
unequivocally admitted that his testimony at trial was diametrically opposite to that in his
written statement and in his prior testimony before the grand jury. There was no
suggestion that his admissions in court as to his inconsistent statements were in any way
equivocal, and they do not appear so. Under this state of the record, the impeachment
was complete when Havner made those specific admissions, and the rule thus provides
that the extrinsic evidence of the written statement and Havner's prior grand jury testimony
were not admissible as evidence. The court erred by admitting the documents over
objection. 
          The remaining question is whether the error was harmful. In our review of
nonconstitutional error, we are to disregard errors, defects, irregularities or variances that
do not affect the substantial rights of the accused. Tex. R. App. P. 44.2(b). A "substantial
right" is affected when the error had a substantial and injurious effect or influence in
determining the jury's verdict. King v. State, 953 S.W.2d 266 (Tex. Crim. App. 1997); see
Tex. R. App. P. 44.2(b). For claims of nonconstitutional error, the Texas Court of Criminal
Appeals has held that "a conviction should not be overturned unless, after examining the
record as a whole, a court concludes that an error may have had 'substantial influence' on
the outcome of the proceeding." Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim. App.
2002). In other words, if we have "a grave doubt" that the result was free from the
substantial influence of the error, then we must reverse. Id. The Texas Court of Criminal
Appeals has explained that "grave doubt" means that "in the judge's mind, the matter is so
evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the
error." Id. (citing O'Neal v. McAninch, 513 U.S. 432, 433–36 (1995)). Thus, "in cases of
grave doubt as to harmlessness the petitioner must win." Burnett, 88 S.W.3d at 637. If,
on the record as a whole, it appears the error "did not influence the jury, or had but a slight
effect," we must conclude the error was not harmful and allow the conviction to stand. 
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
          A related issue we will address before determining harm is the question of whether
the court erred by refusing to give an instruction in the jury charge that would have
restricted the jury's consideration of the written statement and grand jury testimony to the
purpose of impeachment. 
          It is clear from the heading of Rule 613 that the rule governs admission of prior
statements for purposes of impeaching the witness. However, in this case, Parson did not
seek to have the jury instructed about the limitation at the time the evidence was
introduced. There is direct authority stating that evidence admitted for all purposes
becomes part of the general evidence in the case, and that a limiting instruction is
therefore inappropriate. Hammock v. State, 46 S.W.3d 889 (Tex. Crim. App. 2001). Thus,
the court did not err by failing to submit a limiting instruction to the jury. 
          The evidence before the jury on these allegations consisted of Havner's
testimony—that Parson had a gun, but had neither threatened nor pointed it toward
anyone—countered by Havner's admission that he had stated otherwise both in his prior
written statement and in his testimony before the grand jury. McCloud testified unwillingly
that Waynell had come to her house—frightened, upset, and crying—and saying that
Parson had a gun. She testified Waynell had told her Parson had pointed the gun at
Havner and then pushed her back in the house with him. McCloud also testified that
Waynell told her Parson had told Havner to "stop or I'll shoot," and that Havner had cut
his foot while running across the open field between their houses. McCloud also testified 
Waynell had later called her, said her first story was incorrect, and told McCloud that those
events had not happened. 
          Officer Anson Amis testified that, when he answered the call on the incident, he
went to McCloud's house and found Waynell and Havner crying on McCloud's couch. 
Amis testified Waynell told him Parson had pointed a rifle at them. After that, Amis and
Deputy Ken Carpenter went to Parson's house, looking for him. Parson did not answer the
door, so they waited until additional officers arrived, and then searched the area. They
found Parson behind his house. 
          Officer Joe Tuttle, who arrived with the additional officers, testified that they
obtained a key to the house from Waynell and that, after determining Parson was not in
the house, they searched the grounds and located him on the west side of a small chicken
coop behind his house—passed out under a bush. Nearby, they found a .22 single-shot
rifle and a 6 mm. semiautomatic rifle. Neither was loaded, and no ammunition was
nearby.



          Carpenter, one of the original responders, testified that, when he talked to Havner,
Havner was frightened because Parson had pointed a gun at him. 
          Waynell's testimony is a remarkable mix. She did not deny telling the officers about
the incident as described above. She did not deny testifying to that effect before the grand
jury. At trial, however, after being taken through the material points of her statement and
testimony, she then testified that none of these things ever happened. 
          It is significant to note Waynell further testified that, after her initial contact with 
Carpenter concerning this incident, she later told Carpenter that Parson had attempted to
get her to change her testimony before she went to the grand jury, had asked her to say
she could not remember anything and to tell people she was drunk and high, and that
Parson had "said that I was turning against him and that he would take me down . . . [that]
[h]e would see to it that we were taken care of so just go ahead and testify against him." 
Waynell testified she told Carpenter she "felt that [Parson] meant that he would have me
and my son killed." Waynell also testified she told Carpenter that Parson told her "he
would take care of business" if she testified against him and that Parson said he could get
her "even if [he] was behind bars." Waynell then testified at trial she had testified before
the grand jury that, on the occasion in question, Parson had a rifle, that it appeared he was
trying to put a bullet in it, and that he had the rifle to his shoulder and had pointed it at her
son's head. 
          After initially denying that Parson had read her grand jury testimony to her over the
telephone, she finally admitted that he had read parts of it to her and that he had called her
many times. She also testified Parson had asked her to contact the district attorney about
her story. The flavor of her testimony is shown by the following excerpt:
Q.He's never encouraged you to tell somebody you can't
remember?
 
A.No.
Q.Never once?
A.He did not encouraged [sic] me to say that, no.
Q.That's different than what you told the grand jury.
A.Yes.
Q.You told the grand jury that's what he had done?
A.Yes.
Q.You told Corporal Carpenter that he threatened to kill you if you
didn't do it?
 
A.Those weren't exactly my words.
Q.Well, your exact words being: That if he still went to prison, he
would have me and my son took out?
 
A.Yes.
 
Q.Did you take that to mean that he would kill you?
 
A.If someone says that, yes.
 
Q.And that's what you told Corporal Carpenter on December the
5th.
 
A.Yes.
 
Q.Two days before you showed up for the grand jury?
 
A.Yes.
 
. . . .
 
Q.In your grand jury testimony . . . you were asked, "Would you
agree with me that he tried to influence your testimony falsely." What did
you tell the grand jury?
 
A."He didn't want me to. He just wanted me to say that I couldn't
remember."
 
Q.He wanted you to lie, didn't he? And what did you say when –
 
A.He wanted me to say that I didn't remember.
 
Q.That's the same thing the defendant told you in a phone
conversation.
 
A.No, he said that –
 
          Sergeant Travis Rhodes, one of the backup officers, testified that he had spoken
to Waynell when he arrived and that she told him Parson had pointed a rifle at both her
and her son. He also testified that, in his opinion, Waynell was not high or intoxicated. He
also testified Waynell had fresh bruises on her back and above her right eye. 
          Claire Haslam, a licensed professional counselor, testified as an expert about
battered woman's syndrome, and ultimately opined that both Waynell and Havner had
anxious attachments consistent with the syndrome, including the "willingness to do
whatever it takes to belong." 
          We conclude the State had the right to place the material portions of Havner's
written statement before the jury so that the State could show that Havner's story had
changed. The State did so, and Havner had full opportunity to attempt to explain the
differences. The State also properly placed Havner's specific prior statement before the
jury in its effort to clearly show those differences and to obtain testimony from Havner
either admitting or denying that the statements were his own. The error in this case was
allowing the statement, in its entirety, to be placed into evidence as an exhibit, in light of
Havner's explicit admission of the differences between his prior statement and his trial
testimony. With the exception of the highlighted differences as discussed above, Havner's
statement was entirely consistent with his trial testimony. Under these facts, and in light
of the entirety of the proceeding, we do not believe this error exerted a "substantial
influence on the outcome of the proceeding." 
          Parson's argument concerning Havner's testimony before the grand jury is even less
compelling. Although Havner was questioned extensively about that testimony, his entire
testimony was not placed before the jury—only brief excerpts from three separate pages
were actually tendered as exhibits. Again, because Havner admitted their contents and
the differences between that testimony and his testimony at trial, the court erred by
admitting the excerpts from the documents themselves as exhibits. However, in light of
their brevity, and the way in which each was discussed in detail with Havner, providing him
full opportunity to explain the differences, and in light of the proceedings as a whole, we
also find this error did not exert a "substantial influence on the outcome of the proceeding." 
The contentions of error are overruled.
          Parson next contends the trial court erred by admitting exhibits 32, 35, 39, and 48,
containing Waynell's prior statements concerning the incident in question. Exhibit 32 is
a typed, two and one-half page single-spaced statement she gave to police May 17, 2004.
Exhibit 35 is a three-page handwritten statement made by her on May 16, 2004. Exhibit
39 is a transcription of twenty-eight pages of Waynell's grand jury testimony given 
December 7, 2004. Exhibit 48 is a one-page handwritten statement, dated December 5,
2004, in which she had informed Carpenter about the threats Parson had made against
her and Havner in connection with her upcoming grand jury testimony. In each instance,
the same situations were broached as discussed above—Waynell testified at trial that her
statements and grand jury testimony were untrue concerning Parson's use of the rifle to
threaten her and her son. 
          These exhibits reflect many of the same problems as discussed concerning
Havner's testimony. However, the objections raised were not consistent. Parson objected
to the admission of exhibits 32 and 35 based solely on hearsay. That is not the issue
raised on appeal, and the contention now raised has thus not been preserved for our
review. See Tex. R. App. P. 33.1. For a contention to be raised on appeal, it must have
been raised at trial by objection. Error is not preserved for review if it varies from the
objection. Ibarra v. State, 11 S.W.3d 189, 196 (Tex. Crim. App. 1999).
          The objection made to the admission of exhibits 39 and 48 was that they were
hearsay and that an improper predicate was laid for their admission. On appeal, so far as
we can glean the intent of the point of error, Parson complains the State committed
reversible error by pursuing its questioning of Waynell concerning her prior statements,
after the court, in a discussion outside the presence of the jury, had advised her she could
invoke her Fifth Amendment right not to testify further about her prior statements. 
However, after the jury returned, and questioning resumed, Waynell did not invoke that
right. 
          Parson suggests on appeal the State acted improperly by calling Waynell as a
witness for the sole purpose of impeachment. That solitary motivation is not shown by the
record. When the state has statements and prior sworn testimony of a sequence of
events, even in light of its suspicion that the witness might testify differently, it may still
assume that the witness will testify truthfully and that prior sworn testimony was also
truthful. The state is then entitled to determine the final content of the witness' testimony,
and if necessary, to impeach such a witness with previous testimony and statements made
by that witness to police. Error has not been shown.
 
 
Extraneous Offenses at Punishment Phase
          Parson next contends the court erred by admitting evidence at the punishment
phase of the trial concerning unadjudicated offenses that occurred before September 1,
1993. He contends, based on Voisine v. State, 889 S.W.2d 371, 372 (Tex. App.—Houston
[14th Dist.] 1994, no pet.), that only evidence of final convictions is admissible if the bad
act occurred before the effective date of the authorizing statute. Tex. Code Crim. Proc.
Ann. art. 37.07(3)(a) (Vernon Supp. 2005). Voisine contains a discussion of the (then)
newly enacted statute, pointing out that, before September 1, 1993, unadjudicated
extraneous offenses were not admissible at the punishment trial of a noncapital case. 
However, the issue addressed there was whether those unadjudicated offenses were
admissible when the offense being tried was committed before the effective date of the
statute, but trial for the offense took place after its effective date. Voisine does not support
Parson's position that evidence of the unadjudicated offenses is inadmissible if such
offenses occurred before the date the statute became effective, and we are aware of no
authority on that point. The contention of error is overruled.
Expert Testimony
          Parson next contends the court erred by admitting expert opinion testimony from
Haslam that Waynell and Havner suffered from "battered woman's syndrome" and that this
explained why their testimony at trial differed from their prior statements and testimony. 
In support of this position, he directs our attention to our opinion in Edwards v. State, 107
S.W.3d 107, 115 (Tex. App.—Texarkana 2003, pet. ref'd), where we noted that an expert
may not testify a witness is truthful, but may testify the witness exhibits symptoms
consistent with sexual abuse. As we noted there, to be admissible, expert testimony must
"assist" the trier of fact. Tex. R. Evid. 702; Duckett v. State, 797 S.W.2d 906, 914 (Tex.
Crim. App. 1990). Expert testimony assists the trier of fact when the jury is not qualified
to "the best possible degree" to determine intelligently the particular issue without the help
of the testimony. Edwards, 107 S.W.3d at 115; Duckett, 797 S.W.2d at 914. The expert
testimony must aid—not supplant—the jury's decision. Id. Expert testimony does not
assist the jury if it constitutes "a direct opinion on the truthfulness" of the testimony. See 
Edwards, 107 S.W.3d at 115; State v. Yount, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993).
          In this case, Haslam did not cross that line. She testified about the syndrome and
opined about its effect on the truthfulness of its victims where their difficulties with their
spouses are concerned. She did not, however, directly address whether these particular
witnesses were testifying truthfully. Error has not been shown. The contention of error is
overruled.
Charge Error
          Parson next contends the court, sua sponte, inserted language in the jury charge
on guilt or innocence that reversed the burden of proof and negated the presumption of
innocence as it applied to the jury's consideration of lesser-included offenses in both cause
numbers. Counsel timely objected to the language complained of on appeal.
Now, if you find from the evidence beyond a reasonable doubt that on
or about May 16, 2004, in Lamar County, Texas, the defendant, Stanley
Mark Parson, did then and there intentionally or knowingly threaten Waynell
Parson with imminent bodily injury and did then and there use or exhibit a
deadly weapon, to-wit: a rifle, during the commission of said assault, as
alleged in Count Two of the indictment, you will find the defendant guilty as
charged.
Unless you so find from the evidence beyond a reasonable doubt, or
if you have a reasonable doubt thereof, you will find the defendant not guilty.
 
If you have a reasonable doubt thereof that the defendant is not guilty
of aggravated assault as charged in Count Two of the indictment you will
next consider whether the defendant is guilty of the offense of deadly
conduct . . . .
 
. . . . 
 
If you have a reasonable doubt thereof that the defendant is not guilty
of deadly conduct you will next consider whether the defendant is guilty of
the offense of simple assault . . . .

          In each instance, the court hand wrote an inserted "not" in the locations emphasized
in the quoted text. We recognize that jury charges are often unnecessarily convoluted, but
it appears clear the charge was correct until the court inserted "not." As it was revised, it
instructed the jury to consider the lesser offense if it had a reasonable doubt that Parson
was not guilty of the crime instead of if it had a reasonable doubt he was guilty of the
crime. 
          However, under these facts, the error is not material. The jury found in both cases
that Parson was guilty of the higher crime under a charge correctly requiring the State to
prove guilt beyond a reasonable doubt and thus did not need to go on to the portion of the
charge involving the lesser-included offenses. This is not a situation where the language
changed the constitutionally required burden of proof; it is a situation where, had the jury
failed to find Parson guilty of the primary charge, it may have been confused about what
was necessary before it could reach the lesser offenses. In that instance, any harm
analysis would be under Almanza. 
          Under that standard, when a defendant raises a proper objection at trial, reversal
is required if this error was calculated to injure the defendant. Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); Aguilar v. State, 914 S.W.2d 649,
651 (Tex. App.—Texarkana 1996, no pet.). The presence of any harm, regardless of
degree, is sufficient to require reversal. Abdnor v. State, 871 S.W.2d 726, 732 (Tex. Crim.
App. 1994). The defendant has the burden of proof to persuade this Court that he suffered
some actual harm as a consequence of the charging error. Id.
          In this instance, even though error exists, for the reasons set out above, it is not
apparent that any actual harm was suffered by Parson because of this error. The
contention of error is overruled.
Extraneous Offenses at Guilt/Innocence Phase
          Parson next contends the trial court erred by admitting testimony that Waynell and
Havner had, on earlier occasions, spent the night away from Parson at McCloud's house
in order to "get away" from him. Parson contends this is proof of an extraneous matter, not
relevant to this offense, and was more prejudicial than probative. At trial, counsel objected
that such constituted a "more prejudicial than probative, extraneous offense." The court
overruled the objection, and Havner testified he and his mother had left Parson's house
before, usually when Parson was drinking. 
          Parson contends this was evidence of an extraneous offense. It is not. There is no
detail about why they had left the house before—only that they did so when Parson was
drinking. The remaining question is whether the evidence should have been kept out
because it was more prejudicial than probative. Trial courts are required to exclude
evidence when its probative value is substantially outweighed by the danger of unfair
prejudice. Tex. R. Evid. 403; Montgomery v. State, 810 S.W.2d 372, 392 (Tex. Crim. App.
1990) (op. on reh'g). In making this determination, the court should "consider the inherent
tendency that some evidence may have to encourage resolution of material issues on an
inappropriate basis and should balance carefully against it the host of factors affecting
probativeness, including relative weight of the evidence and the degree to which its
proponent might be disadvantaged without it." Fuller v. State, 829 S.W.2d 191, 206 (Tex.
Crim. App. 1992). 
          A trial court's decision in balancing these factors is reviewed under an abuse of
discretion standard and is disturbed on appeal only when the trial court's decision falls
outside the zone of reasonable disagreement. Montgomery, 810 S.W.2d at 391–92.
          In this case, testimony that Havner and his mother had spent nights away from
Parson before, even "to get away from him," is not of such magnitude as to improperly
sway a jury with emotion rather than reason. It lies within the zone of reasonable
disagreement. The contention of error is overruled.
Legal and Factual Sufficiency
          Parson next contends there was legally and factually insufficient evidence to support
the verdict of guilt—specifically, that Parson used a deadly weapon and that he caused
bodily injury to Waynell by pushing her into a door. In reviewing the legal sufficiency of the
evidence, we view the relevant evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000). In our review of the evidence for factual sufficiency, we view all the evidence in a
neutral light and determine whether the evidence supporting the verdict is too weak to
support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict
is strong enough that the beyond-a-reasonable-doubt standard could not have been met. 
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State,
144 S.W.3d 477, 486 (Tex. Crim. App. 2004)). 
          We have previously set out the evidence in detail. The specific evidence on this
point consists of testimony that Waynell had told McCloud that Parson pointed the rifle at
Havner and was then pushing Waynell back in the house with him, and that Waynell told
responding officers Parson had pointed a rifle at her and her son. Havner's written
statement read that Parson had come at them with a gun, saying, "stop or I'll shoot you,"
and then pushed Waynell into the door. There are also photographs of Waynell taken on
the day of and the day after the incident. Rhodes testified he saw swelling and redness
about Waynell's eye and a bruise on her back. In her statement, Waynell had recounted
a bruise on her left chin, a bruise below her left knee, bruises and scratches on her right
forearm, two bruises on her back, scratches on her hands, and that she "[felt] like [she had]
been run over by a Mack truck." Rhodes testified Waynell's injuries were fresh and were
consistent with her story at that time.
          The evidence shows that Waynell sustained some bodily injuries, that the timing of
those injuries was consistent with the time of the incident, and that she originally stated 
they were as a result of the incident. The evidence clearly shows that Parson had a gun
in his hands and that he was attempting to push Waynell into the door of their house. The
offense, as set out by the charge, required only that Parson cause bodily injury, while using
or exhibiting a deadly weapon. The evidence is legally sufficient to support the finding.
          The contrary evidence consists of Waynell's and Havner's testimony—which was
essentially that, although Parson had a gun in his hands, he did not directly threaten to use
it, and he did not point it directly at them. That testimony, however, as recounted at length
previously, was severely impeached by testimony about Parson's efforts to derail Waynell's
and Havner's testimony and encourage them to conveniently "misremember" the incident. 

          The jury was entitled to draw its conclusions from the evidence, and the evidence
against its verdict is not so compelling as to justify a conclusion that the evidence was
factually insufficient. The contention of error is overruled.
Cumulative Error
          Parson next contends the cumulative effect of all errors at trial was such as to
violate his due process right to a "reasonably competent and effective" trial under the
United States Constitution, Amendment XIV. Although the Texas Court of Criminal
Appeals has stated that a number of errors may result in reversible error due to their
cumulative effect, Chamberlain v. State, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999), our
resolution of the contentions raised above shows that such a situation does not exist in the
present case. This contention of error is overruled.
Conclusion
          We affirm the judgment.

                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      December 29, 2005
Date Decided:         March 10, 2006

Publish