[JH1] 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-04-514-CR

 

RODOLFO RANGEL                                                              APPELLANT

 

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 78TH
DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

OPINION
ON THE STATE=S
SECOND

PETITION
FOR DISCRETIONARY REVIEW

------------

Pursuant to rule of appellate procedure 50, we have reconsidered our
previous opinion on the State=s petition for discretionary review. 
See Tex. R. App. P.
50.  We withdraw our judgment and opinion
dated June 5, 2006, and substitute the following in order to address and apply
the recent Supreme Court case of Davis v. Washington.  126 S. Ct. 2266 (2006).

                                                    








I.  Introduction

Appellant Rodolfo Rangel appeals from his convictions of aggravated
sexual assault of a child, indecency with a child, and attempted indecency with
a child.  In his first issue, appellant
argues that the trial court committed harmful error when it determined that
C.R., an alleged victim, was unavailable to testify.  In his second issue, he argues that the trial
court erred in denying his motion for instructed verdict because the evidence
presented at trial was insufficient to prove venue as to the offense committed
against C.R.  In his third issue,
appellant argues that the trial court committed error by refusing to require
the State to elect among separate offenses and that the jury verdict was not
unanimous.  Finally, in his six remaining
issues, appellant generally complains that the evidence was legally and
factually insufficient to support the jury=s verdict.  We affirm in part
and reverse and remand in part.  

II.  Background Facts

On January 8, 2003, Debbie Adams, a Child Protective Services (CPS)
investigator, began an investigation of appellant and his wife, Rosa, after
receiving a referral of abuse.  E.R. and
C.R. are the biological children of appellant and Rosa, and R.T. and G.T. are
Rosa=s biological children.  On
January 10, 2003, CPS removed all four children after G.T. made statements to
Adams that appellant had sexually abused her.








On May 4, 2004, appellant was indicted on seven counts of aggravated
sexual assault of a child, indecency with a child, and attempted indecency with
a child.  In count I, the alleged victim
was C.R.; in count II, the alleged victim was E.R.; in counts III, V, VI, and
VII, the alleged victim was R.T.; and in count IV, the alleged victim was
G.T.  Appellant pled not guilty to all
charges, and trial by jury began on September 27, 2004.  The jury found appellant guilty on counts I,
III, IV, V, and VI and not guilty as to count VII.  On October 1, 2004, the trial court assessed
appellant=s punishment
as to count I, aggravated sexual assault, at fifty years in the Institutional
Division of the Texas Department of Criminal Justice (TDCJ); to count III,
indecency with a child, at twenty years in TDCJ; to count IV, attempted
indecency with a child, at ten years in TDCJ; to count V, aggravated sexual
assault, at fifty years in TDCJ; and as to count VI, indecency with a child, at
twenty years in TDCJ.  On October 18,
2004, the trial court granted appellant=s motion for directed verdict as to count II and acquitted him on that
count.

III. Article 38.071








Before trial, the State moved to admit a videotaped interview of C.R.,
one of appellant=s alleged
victims, in lieu of C.R.=s live
testimony because she was emotionally unavailable to testify.  The interview was conducted by a CPS
investigator approximately two months after CPS removed C.R. from appellant=s home.  During the pretrial
hearing on the motion, Cheryl Polly, a licensed professional counselor, testified
that appearing in the courtroom would be an extremely traumatic experience for
C.R., then a six-year-old child, and that although testifying by closed-circuit
television would be less traumatic for C.R., she still would not be able to
testify because Astrangers@ would be involved.  Polly
stated that she began counseling C.R. on February 25, 2003, and that at the
time of trial, she was still counseling her once a week or every other
week.  Additionally, Polly testified that
C.R. made outcries that appellant had sexually assaulted her and that when C.R.
talked about the assaults, she disassociated, her eyes glazed over, and she was
not able to express herself. Polly said that although C.R. was primarily in
remission at the time of trial, she was still having symptoms of sexual trauma,
such as nightmares and wetting the bed. 








After hearing all of the evidence, and upon the State=s request, the trial court determined that requiring C.R. to testify
would be too traumatic for her, so the trial court granted the State=s article 38.071 motion.  See
Tex. Code Crim. Proc. Ann. art.
38.071 (Vernon 2005).  In doing so, the
trial judge stated that he was trying to balance the harm that C.R. would
experience if she were required to testify against appellant=s right to confront her.  The
judge stated that if after watching C.R.=s videotaped interview he determined that she had been guided, then he
would reconsider the issue. 

In his first issue, appellant contends that the trial court committed
harmful error when it denied him his right to confront and cross-examine
C.R.  The State argues that the trial
court did not err by admitting the videotaped 
interview of C.R. into evidence because C.R. was unavailable to
testify.  In this same issue, appellant
also argues that the trial court erred when it determined that C.R.=s interview was conducted by a neutral individual in a detached
manner.  The State argues that there is
no legitimate allegation that CPS investigators are not neutral as long as they
ask non-leading questions.

A.  Unavailability of C.R.

Appellant asserts that the trial court erred in ruling that C.R. was
unavailable to testify at the trial. 
Appellant claims that the evidence presented at the pretrial hearing
does not support the trial court=s ruling that C.R. was unavailable. 
Additionally, appellant contends that C.R. could have testified by
closed-circuit television like R.T. and G.T. did. 

1.  Applicable Law








Article 38.071, entitled, ATestimony of Child Who is Victim of Offense,@ applies when a trial court determines that a child under thirteen
years of age is unavailable to testify. Id. ' 1.  In this case, the trial
court allowed C.R. to testify under these procedures on the State=s motion.  The pertinent
sections of article 38.071 provide,

Sec.
2(a)  The recording of an oral statement
of the child made before the indictment is returned or the complaint has been
filed is admissible into evidence if the court makes a determination that the
factual issues of identity or actual occurrence were fully and fairly inquired
into in a detached manner by a neutral individual experienced in child abuse
cases that seeks to find the truth of the matter.[1]      

 

. . .
. 

 

Sec.
8(a)  In making a determination of
unavailability under this article, the court shall consider relevant factors
including the relationship of the defendant to the child, the character and
duration of the alleged offense, the age, maturity, and emotional stability of
the child, and the time elapsed since the alleged offense, and whether the
child is more likely than not to be unavailable to testify because:

(1)
of emotional or physical causes, including the confrontation with the
defendant; or

(2)
the child would suffer undue psychological or physical harm through his
involvement at the hearing or proceeding.

 

(b) A
determination of unavailability under this article can be made after an earlier
determination of availability.  A
determination of availability under this article can be made after an earlier
determination of unavailability.  

 

Id. '' 2(a), 8.








2.  Standard of Review

The trial court=s
determination that a child is unavailable is the first step that must be met in
order to satisfy the requirements of article 38.071.  Edwards v. State, 107 S.W.3d 107,
109-10 (Tex. App.CTexarkana
2003, pet. ref=d).  When reviewing the trial court=s implied finding of unavailability, we look to see whether the trial
court abused its discretion in making that determination.  Id. at 110.  We will not reverse a trial court=s ruling that is within the zone of reasonable disagreement.  Id.; see also Green v. State,
934 S.W.2d 92, 102 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200
(1997); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)
(op. on reh=g).  

3.  Analysis

a.  Article 38.071, Section 8








        Applying the factors listed in article 38.071, section 8, we
first note that C.R. was only six years old at the time of trial, thus meeting
the statute=s under age
thirteen requirement.  Tex. Code Crim. Proc. Ann. art. 38.071,
' 8; see also Graves v. State, 176 S.W.3d 422, 428 (Tex. App._Houston
[1st Dist.] 2004, pet. struck) (stating that article 38.071 requires child to
be thirteen or younger).  Additionally,
Polly testified that C.R. would be traumatized if she were required to testify,
that C.R. was still in counseling to deal with the sexual abuse, that C.R.
still suffered from nightmares and bedwetting, and that C.R. disassociated when
she talked about the assaults.  See
Lively v. State, 968 S.W.2d 363, 366-67 (Tex. Crim. App. 1998) (noting that
trial court heard testimony that child Aregressed@ when in the
defendant=s presence
and that requiring the child victim to testify would pose a Arisk@ to the
child=s recovery).  After reviewing
all of the evidence, we conclude that the trial court did not abuse its
discretion in ruling that C.R. was unavailable because the ruling of the trial
court is within the zone of reasonable disagreement.  See Green, 934 S.W.2d at 102. 

b.  Article 38.071, Section 2 

During the trial, appellant also objected to the introduction of C.R.=s videotaped interview on the basis that the person conducting the
interview was not neutral and detached, as required by article 38.071, section
2.  Appellant argued that because Camille
Cleveland, a CPS investigator, worked for CPS and was affiliated with the
State, she did not meet the definition of a neutral, detached interviewer.  The trial court overruled appellant=s objection and admitted the videotape into evidence.  However, the trial court also allowed
appellant to inquire about Cleveland=s neutrality during her cross-examination. 








During her direct examination, Cleveland stated, AI was never involved with the family. 
All I did in this case was interview the children.@  Additionally, during her
cross-examination, Cleveland testified that she did not participate in the
initial investigation, the removal of the children, or the assessment of the
children after the interview.

Appellant argues that because Cleveland is an investigator with CPS
and because the interview was conducted at the Children=s Advocacy Center, which is staffed with CPS workers and law
enforcement workers, Cleveland was not neutral and detached.  We do not find this argument convincing.  The mere fact that the interview was
conducted by a CPS interviewer does not, by itself, make the interviewer
biased.  See Smith v. State, 88
S.W.3d 652, 671 (Tex. App._Tyler 2002, pet. ref=d) (concluding that the CPS investigator was neutral), cert. denied,
537 U.S. 1206 (2003).  Cleveland
testified that she alone had performed approximately 250 videotaped
interviews.  We decline to hold that any
interviewer who has State connections is not neutral.  There must be some other evidence
demonstrating that the interviewer is not neutral or detached.








We now turn to an examination of this case.  Here, Cleveland stated that her only role
with the children was to interview them. 
Cleveland did not participate in any other aspect of this case.  After reviewing the videotapes, we cannot say
that Cleveland did not act in a neutral manner. 
See id. (holding that the interviews by a CPS investigator were Aconducted in an objective manner@). We hold that the trial court did not abuse its discretion in
determining that Cleveland was a neutral interviewer.

B.  Right to Confrontation

Appellant further contends in his first issue that article 38.071 is
unconstitutional as applied to him because it denies him his Sixth Amendment
right to confrontation.  See U.S. Const. amend. VI; Crawford v.
Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).  Appellant claims that C.R.=s videotaped interview is testimonial hearsay, and that regardless of
whether she was unavailable, he did not have a prior opportunity to
cross-examine her, so the interview is inadmissible.  See id. at 53-54, 124 S. Ct. at 1365
(holding that for testimonial hearsay to be admissible, declarant must be
unavailable and defendant must have had a prior opportunity to
cross-examine). 

1.  Standard of Review








Although we defer to a trial court=s determination of historical facts and credibility, we review a
constitutional legal ruling, i.e. whether a statement is testimonial or
non-testimonial, de novo.  Wall
v. State, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); see Lilly v.
Virginia, 527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999).  This is particularly so because the legal
ruling of whether a statement is testimonial under Crawford is
determined by the standard of an objectively reasonable declarant standing in
the shoes of the actual declarant.  Wall,
184 S.W.3d at 742-43.  On that question
trial judges are no better equipped than are appellate judges, and the ruling
itself does not depend upon demeanor, credibility, or other criteria peculiar
to personal observation.  Id. at
743; see Lilly, 527 U.S. at 136-37, 119 S. Ct. at 1900.  

2.  Analysis

We recognize that this is a case of first impression in Texas.  Although other Texas courts have addressed
confrontational complaints in regard to article 38.071, no court has addressed
this particular issue post-Crawford. 
Cf. Moreno v. State, Nos. 13-03-00649-CR, 13-03-00650-CR, 2005 WL
1413491, at *2 (Tex. App._Corpus Christi May 26, 2005, pet. ref=d) (mem. op.) (not designated for publication) (holding Crawford
did not apply to videotape because victim testified).  








In Marc v. State, citing Crawford, we held that, Awithout exception, testimonial statements of witnesses absent from
trial are admissible over a Sixth Amendment Confrontation Clause objection only
where the declarant is unavailable and the defendant has had a prior
opportunity to cross-examine the declarant.@  166 S.W.3d 767, 778 (Tex. App._Fort
Worth 2005, pet. ref=d) (citing
Crawford, 541 U.S. at 68, 124 S. Ct. at 1374); see also Hale v. State,
139 S.W.3d 418, 421 (Tex. App._Fort Worth 2004, no pet.). 
Accordingly, the threshold question under Crawford is whether the
statement is testimonial in nature.  Crawford,
541 U.S. at 68, 124 S. Ct. at 1374; see also Woods v. State, 152 S.W.3d
105, 113 (Tex. Crim. App. 2004) (recognizing Crawford drew a distinction
between testimonial and non-testimonial statements), cert. denied, 544
U.S. 1050 (2005); Wilson v. State, 151 S.W.3d 694, 697-98 (Tex. App._Fort
Worth 2004, pet. ref=d) (noting
the threshold question is whether statement is testimonial).








The Supreme Court failed to define what constitutes a testimonial
statement, but it did state that the term applies Aat a minimum to prior testimony at a preliminary hearing, before a
grand jury, or at a former trial; and to police interrogation.@  Crawford, 541 U.S. at
68, 124 S. Ct. at 1374.  Additionally,
the Supreme Court offered three formulations to demonstrate the core class of Atestimonial@
statements:  1) ex parte in-court
testimony or its functional equivalent_that
is, material such as affidavits, custodial examinations, prior testimony that
the defendant was unable to cross-examine, or similar pretrial statements that
declarants would reasonably expect to be used prosecutorially; 2) extrajudicial
statements contained in formalized testimonial materials, such as affidavits,
depositions, prior testimony, or confessions; and 3) statements that were made
under circumstances which would lead an objective witness reasonably to believe
that the statement would be available for use at a later trial.[2]  Id. at 51-52, 124 S. Ct. at 1364.  The Supreme Court held that, A[w]here testimonial statements are at issue, the only indicum of
reliability sufficient to satisfy constitutional demands is the one the
Constitution actually prescribes: confrontation.@  Id. at 68-69, 124 S.
Ct. at 1374.  A common nucleus of
testimonial statements is that they involve a Aformal or official statement made or elicited with the purpose
of being introduced at a criminal trial.@  State v. Snowden, 867
A.2d 314, 324 (Md. 2005) (emphasis added).

The State argues that C.R.=s statement does not fall within the third category, statements that
were made under circumstances that would lead an objective witness reasonably
to believe that the statement would be used at trial, because C.R. did not
appreciate the nature of a trial. 
Although the statement here does not fit neatly into any of the three Acore class@ categories
of testimony described in Crawford, we determine that it is nevertheless
testimonial.  








Two Colorado courts of appeals have held that the test for determining
whether a child=s statement
is testimonial hearsay depends on whether an objective person in the child=s position would believe his or her statements would lead to
punishment of the defendant.  See
People v. Sharp, No. 04CA0619, 2005 WL 2877807, at *5 (Colo. App. Nov. 3,
2005); People v. Vigil, 104 P.3d 258, 263 (Colo. App. 2004), aff=d in part, rev=d in part on other grounds, People
v. Vigil, 127 P.3d 916 (Colo. 2006).[3]  However, we need not decide what the
appropriate standard should be because we determine that C.R.=s statement was testimonial on other grounds.

In the recent case of Davis v. Washington, the Supreme Court
attempted to clarify the distinction between testimonial and non-testimonial
statements.  126 S. Ct. 2266, 2268.  The Supreme Court held that 

statements
are nontestimonial when made in the course of police interrogation under
circumstances objectively indicating that the primary purpose of interrogation
is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances
objectively indicate that there is no such ongoing emergency, and that the
primary purpose of the interrogation is to establish or prove past events
potentially relevant to later criminal prosecution.  








Id. at 2268-69.  In Davis, a 911 emergency operator
received a phone call but was disconnected before speaking to anyone.  Id. at 2270.  The operator then returned the call, and Michelle
McCottry answered the phone and told the operator that she was involved in a
domestic disturbance dispute with her boyfriend, Adrian Davis.  Id. at 2271.  The operator then asked McCottry a series of
questions about the assault and Davis, including his birth date and his reason
for going to McCottry=s
apartment.  Id.  Davis was later charged with a felony
violation of a domestic no-contact order. 
Id.  At trial, McCottry did
not testify, but the trial court admitted the recorded 911 conversation between
McCottry and the 911 emergency operator over Davis=s Confrontation Clause objection, and the jury convicted Davis.  Id.  








In its analysis, the Supreme Court stated that the question in Davis
is Awhether, objectively considered, the interrogation that took place in
the course of the 911 call produced testimonial statements.@  Id. at 2276.  The Court stated that McCottry=s statements were not testimonial because (1) she was describing
events as they were actually happening rather than past events, (2) any
reasonable listener would recognize that McCottry was facing an ongoing
emergency, (3) the nature of what was asked and answered, when viewed
objectively, was such that elicited statements were necessary to be able to
resolve the present emergency, rather than simply to learn what had happened in
the past, and (4) McCottry was frantically answering the 911 emergency operator=s questions over the phone, in an environment that was not tranquil,
or even safe.  Id. at
2276-77.  After looking at all the
evidence, the Court concluded that Athe circumstances of McCottry=s interrogation objectively indicate its primary purpose was to enable
police assistance to meet an ongoing emergency.@  Id. at 2277.  The Court stated that McCottry was seeking
aid, not telling a story about the past. 
Id. at 2279.  Accordingly,
under these circumstances, the out-of-court statements were not
testimonial.  

Here, unlike in Davis, C.R. was describing past events.  The CPS investigator did not even interview
C.R. until two months after CPS removed her from her home.  Additionally, when C.R. talked with the
investigator, she was not facing an ongoing emergency.  C.R. had already been removed from her home,
was placed in foster care, and was receiving counseling for the abuse.  When viewed objectively, the nature of what
was asked and answered during the interview was such that C.R.=s statements were elicited simply to learn about what had happened in
the past.  Finally, C.R., like the
declarant in Crawford, was responding calmly, at the Children=s Advocacy Center, to a series of questions, with the investigator
videotaping her answers.  See id.
at 2277.  We hold that the present case
is clearly distinguishable from the facts in Davis, and similar to the
facts in Crawford.  








Moreover, the structured, formalized questioning of C.R. by the
investigator, regardless of whether the statement was sworn or unsworn,[4]
is more akin to the types of ex parte examination discussed and
condemned in Crawford than a Acasual remark to an acquaintance@ or even to initial statements made to a police officer responding to
a call.  Crawford, 541 U.S. at 51,
124 S. Ct. at 1364.  Furthermore, during
the interview Cleveland stated that she was asking C.R. questions to make sure
that Ait@ did not
happen again.  Regardless of whether C.R.
understood the full extent to which her answers could be used, i.e., as
testimony in a criminal prosecution of appellant, we believe, either under a
subjective standard or an objective standard, that a four-year-old child would
be able to perceive this as meaning that her words would be used to establish
or prove some factCi.e., that
he sexually assaulted herCand that the
establishment of that fact was necessary so that a person in authority, whether
the investigator or someone else, would make appellant stop.  








Here, regardless of whether the four-year-old child may or may not
have perceived when she made the statements that they could be used against
appellant as evidence in a criminal case, the statute itself clearly
contemplates  that a child=s statement admitted under article 38.071 will function as testimony
in a criminal case.  In Hightower v.
State, the court of criminal appeals stated that in regard to article
38.071, the legislature Arecognized
the importance of protecting young children from the turmoil associated with
having to give testimony in a courtroom and has acted to eliminate or alleviate
that trauma within the parameters of the Constitution.@  822 S.W.2d 48, 53 (Tex. Crim.
App. 1991).  Additionally, article 38.071
is titled, ATestimony of child who is victim of offense.@ [5]
Tex. Code Crim. Proc. Ann. art.
38.071 (emphasis added).  Thus,
regardless of what C.R. thought her statements would be used for, they were
clearly admitted at trial to function as testimony against appellant. 








Having determined that C.R.=s statements were testimonial, we must now  determine whether appellant=s Sixth Amendment right to confrontation was violated.  As stated above, the Supreme Court in Crawford
held that testimonial statements of a witness who does not appear at trial are
not admissible unless he is unavailable to testify and the defendant had
a prior opportunity to cross‑examine him. 
Crawford, 541 U.S. at 59, 124 S. Ct. at 1369; accord Russeau
v. State, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005), petition for cert.
filed, 74 U.S.L.W. 3407 (U.S. Jan. 3, 2006) (No. 05-856).  Having already held that the trial court
properly determined that C.R. was unavailable under article 38.071, we now turn
to whether appellant had a prior opportunity to cross-examine C.R.  See Tex.
Code Crim. Proc. Ann. art. 38.071. 


The primary focus of Crawford is directed at the common-law
guarantee of the right to cross-examine the witnesses against the accused in
order to Atease out
the truth@ before the
trier of fact.  Crawford, 541 U.S.
at 43-46, 124 S. Ct. at 1359-61; accord Reyna v. State, 168 S.W.3d 173,
183 (Tex. Crim. App. 2005).  However,
several state courts that have addressed the Sixth Amendment post-Crawford
have held that the Confrontation Clause is not violated even though the
defendant was not allowed to cross-examine the witness face-to-face at
trial.  See, e.g., Blanton v.
State, 880 So.2d 798, 801 (Fla. Dist. Ct. App. 2004) (stating defendant had
opportunity to cross-examine victim when defendant availed himself of
opportunity to take victim=s deposition); Howard v. State, 816 N.E.2d 948, 959 (Ind. Ct.
App. 2004) (holding Confrontation Clause not violated when child victim=s deposition was entered into evidence because it was given under oath
and at defendant=s
request).  








We believe that article 38.071 provides an effective alternative to
the traditional face-to-face confrontation at trial.  See Tex.
Code Crim. Proc. Ann. art. 38.071, ' 2(b).  It provides,

If a
recording is made under Subsection (a) of this section and after an indictment
is returned or a complaint has been filed, by motion of the attorney
representing the state or the attorney representing the defendant and on the
approval of the court, both attorneys may propound written interrogatories that
shall be presented by the same neutral individual who made the initial
inquiries, if possible, and recorded under the same or similar circumstances of
the original recording with the time and date of the inquiry clearly indicated
in the recording.  

 

Id.   








In Smith v. State, the Tyler court of appeals, albeit pre-Crawford,
held that the defendant=s right to
confrontation was not violated when he had the opportunity to submit written
interrogatories to the victim under article 38.071.  88 S.W.3d 652, 670-71 (Tex. App._Tyler
2002, pet. ref=d), cert.
denied, 537 U.S. 1206 (2003).  In Smith,
the trial court determined that the victim, who was five years old at the time
the first interview was conducted, was unavailable and allowed her videotaped
interview with a CPS investigator into evidence at trial.  Id. at 656-57.  However, after making the finding of
unavailability upon the defendant=s objection, the trial court allowed the defendant and the State to
submit written interrogatories for presentation to the victim under article
38.071 during another videotaped interview. 
Id. at 657.          The Tyler court held that although
written interrogatories lack spontaneity, the defendant had the opportunity to
test the reliability of the victim=s responses to the first interview by submitting these questions.  Id. at 670-71.  Additionally, the court noted that the
written interrogatories were more effective than traditional cross-examination
because the child victim was unable to testify in a courtroom setting.  Id. at 671.  

In this case, since C.R. was unavailable for traditional
cross-examination, article 38.071 would have allowed appellant an opportunity
to submit written interrogatories to her in another videotaped interview.  But he never did. Accordingly, we believe
that appellant had an opportunity to effectively cross-examine C.R. through
written interrogatories.  See Tex. Code Crim. Proc. Ann. art. 38.071,
' 2(b).  The statute afforded
appellant the opportunity to submit interrogatories after viewing the first
videotaped interview.  See id.  If appellant was concerned about a question
asked by Cleveland or a response given by C.R. during the interview, he should
have utilized article 38.071, section 2(b) by requesting and submitting written
interrogatories.  See id.  








We hold that in this case, the Confrontation Clause was not violated
because article 38.071 allowed appellant an opportunity to submit written
interrogatories to C.R. after the trial court determined that C.R. was
unavailable.  Further, by submitting
interrogatories, appellant would have had the opportunity to test the
reliability of C.R.=s statements
from the prior interview.  See Smith,
88 S.W.3d at 670-71.  Unfortunately,
appellant did not avail himself of this opportunity.  When a defendant fails to use the statutory
procedures available to him that could safeguard his rights, his failure to do
so cannot later form the basis for his constitutional attack on article 38.071.  See, e.g., Adams v. State, 161 S.W.3d
113, 114 (Tex. App._Houston [14th Dist.] 2004, pet. ref=d) (holding defendant waived right to challenge jurisdiction when he
failed to follow article 4.18 of the code of criminal procedure); see also
State v. Yount, 853 S.W.2d 6, 9 (Tex. Crim. App. 1993) (op. on reh=g) (holding that defendant who requested charge on lesser-included
offense is estopped from claiming on appeal that conviction of lesser-included
offense is barred by limitations).  Since
appellant did not take advantage of the system in place that could have
reasonably protected his right of confrontation, he has waived his
Confrontation Clause challenge to article 38.071 on appeal.

Having determined that C.R.=s statements were testimonial, C.R. was unavailable, and appellant had
an opportunity to cross-examine C.R. through written interrogatories, we hold
that appellant was not denied his Sixth Amendment right to confrontation.  See Crawford, 541 U.S. at 68, 124 S.
Ct. at 1374.  Therefore, we overrule
appellant=s first
issue.








IV.  Motion for Instructed
Verdict on Venue

In issue two, appellant complains that the trial court erred in
overruling his motion for instructed verdict as to count I of the indictment
because the State failed to prove the venue of the crime.  Specifically, count I charges appellant with
aggravated sexual assault of C.R.  The
State argues that it proved by a preponderance of the evidence that the sexual
assault occurred in Wichita County. 

A.  Applicable Law

The pertinent part of article 13.15 of the code of criminal procedure
provides that a A[s]exual
assault may be prosecuted in the county in which it is committed.@  Tex. Code Crim. Proc. Ann. art. 13.15 (Vernon 2005).  Article 13.17 provides that A[t]o sustain the allegation of venue, it shall only be necessary to
prove by the preponderance of the evidence that by reason of the facts in the
case, the county where such prosecution is carried on has venue.@  Id. art. 13.17.  On appeal we are to presume venue was proved
in the trial court unless it was disputed at trial or the record affirmatively
shows the contrary.  See Tex. R. App. P. 44.2(c)(1).








B.  Analysis

The prosecution has the burden to prove that venue is proper in the
county where the trial is sought.  Proof
of venue must be demonstrated by either direct or circumstantial evidence.  Black v. State, 645 S.W.2d 789, 790
(Tex. Crim. App. 1983).  Evidence is
sufficient to prove venue if from the evidence the jury may reasonably conclude
that the offense was committed in the county alleged.  Rippee v. State, 384 S.W.2d 717, 718
(Tex. Crim. App. 1964).  When venue is
made an issue in the trial court, failure to prove venue in the county of
prosecution constitutes reversible error. 
Black, 645 S.W.2d at 791; see also Knabe v. State, 836
S.W.2d 837, 839 (Tex. App.CFort Worth 1992, pet. ref=d).  

As discussed above, C.R. was declared unavailable by the trial court
and did not testify at trial.  However,
the March 26, 2003 videotaped interview between C.R. and Cleveland was
introduced at trial.  At the close of the
State=s case, appellant moved for an instructed verdict, asserting that
venue was not proven as to C.R.  At the
hearing on the motion, appellant stated that in the videotaped interview when
Cleveland asked C.R. if the assaults had occurred in Wichita Falls, C.R. stated
Ano.@








The State argued that venue was proven by the totality of the evidence
at trial.  First, when C.R. was asked
where her parents lived, she responded, Adown the street,@ and when
she was asked where the assaults happened, C.R. responded, Adown the street.@  Second, Polly stated that when she asked C.R.
when the assaults happened, C.R. stated that they happened when she was four
and that it was right before she went into foster care.  According to C.R.=s statements, the assaults occurred when C.R. was living in Wichita
County. Third, in the videotaped interview with G.T., G.T. stated that the
assaults happened when she was in second grade, and C.R. would have turned four
years old after G.T. completed the second grade.  After hearing the evidence from both sides,
the trial court overruled appellant=s motion for an instructed verdict.

In C.R.=s March 26,
2003 interview, when Cleveland asked C.R. where her parents lived, she
responded, Adown the
street.@  However, C.R. also said during
the interview, AWhen I lived
in Wichita Falls, my dad was good.@ Additionally, when Cleveland asked C.R. where she lived when
appellant touched her Abottom,@ C.R. responded, Adown the street.@  Cleveland then asked her if it was in Wichita
Falls, and C.R. said Ano,@ and Cleveland then asked her where she lived, and C.R. responded, Adown the street.@








Polly testified that she never asked, and C.R. never told her, what
city or county in which the abuse occurred. 
Polly stated that the only thing C.R. told her was that it happened Aprior to [her] coming into foster care when she was four.@

Dr. Terry Johnson, a pediatrician, stated that he examined C.R. on May
15, 2003, and that there was a significant decrease in her hymenal tissue.  Dr. Johnson testified that he was not able to
date when the assaults took place. 

After reviewing all of the evidence, we hold that the trial court did
not err in overruling appellant=s motion for instructed verdict. 
Even though C.R. stated that the assaults did not occur in Wichita
Falls, she also stated that the assaults took place Adown the street@ and that
her parents lived Adown the
street.@  The State contends that when
C.R. said Adown the
street,@ she was talking about Wichita Falls because that is where the
interview took place.  We agree with the
State.  If the assaults took place in
Conroe, Texas or Washington, then it would not seem logical for C.R. to say
that the assaults took place Adown the street.@  Further, C.R.=s parents were actually in Wichita Falls when C.R. responded that they
were Adown the street.@  See Shilling v. State, 977 S.W.2d 789,
790-91 (Tex. App.CFort Worth
1998, pet. ref=d)
(determining that evidence was sufficient to prove venue was proper in Denton
County).  We hold that venue was proven
as to C.R. by a preponderance of the evidence; therefore, we overrule appellant=s second issue.








V.  Jury Charge

In his third issue, appellant complains (1) that the trial court erred
when it refused to require the State to elect among separate offenses and (2)
that the jury verdict was not unanimous because the jury charge listed several
different offenses and some jurors could have found appellant guilty of one
offense, while other jurors could have found him guilty of a different offense
listed in count IV.[6]  The State argues that although there was
evidence presented at trial as to several incidents of attempted indecency with
a child in regard to G.T., there was only one incident that met the burden of
proof of beyond a reasonable doubt.

                                         A.
Error Analysis

Appellate review of error in a jury charge involves a two-step
process.  Abdnor v. State, 871
S.W.2d 726, 731 (Tex. Crim. App. 1994). 
Initially, we must determine whether error occurred.  If so, we must then evaluate whether
sufficient harm resulted from the error to require reversal.  Id. at 731-32. 








The relevant portion of the jury charge stated, 

[I]f you believe from the evidence beyond a reasonable doubt, that on
or about the 13th day of January, 2003, in the County of Wichita and the State
of Texas, the defendant, did then and there, with the specific intent to commit
the offense of Indecency with a Child of [G.T.], do an act, to-wit: by asking
[G.T.] to touch his genitals and/or by moving his hand towards [G.T.] to try to
touch her breasts or genitals and/or by offering [G.T.] money which amounted to
more than mere preparation that tended but failed to effect the commission of
the offense. . . .

We rely on the Aseparate
offenses@ analysis conducted by the court of criminal appeals in Vick v.
State to determine whether the offense of indecency with a child in section
21.11 of the penal code involves separate offenses. 991 S.W.2d 830, 832-33
(Tex. Crim. App. 1999); see also Tex.
Penal Code Ann. ' 21.11
(Vernon 2003); Finster v. State, 152 S.W.3d 215, 218 (Tex. App.CDallas 2004, no pet.).  The
relevant portion of section 21.11 states,

(a) A
person commits an offense if, with a child younger than 17 years and not the
person=s
spouse, whether the child is of the same or opposite sex, the person:

(1)
engages in sexual contact with the child or causes the child to engage in
sexual contact; or

(2)
with intent to arouse or gratify the sexual desire of any person:

. . .
  

(B)
causes the child to expose the child=s anus or any part of the
child=s
genitals.

. . .
.

(c)
In this section, Asexual
contact@
means the following acts, if committed with the intent to arouse or gratify the
sexual desire of any person:








(1)
any touching by a person, including touching through clothing, of the anus,
breast, or any part of the genitals of a child; or

(2)
any touching of any part of the body of a child, including touching through
clothing, with the anus, breast, or any part of the genitals of a person.

 

Tex. Penal Code Ann. ' 21.11
(emphasis added).  Section 21.11(a)(1)
focuses on the contact of the child to the person, whereas section
21.11(a)(2)(B) focuses on the exposure of the child.  Additionally, an offense under section (a)(1)
is a felony of the second degree, but an offense under section (a)(2) is a
felony of the third degree.  Id. ' 21.11(d).  It is apparent that
the legislature intended to separately and distinctly criminalize each act in
the statute.  See Vick, 991 S.W.2d
at 833.  We conclude that each separately
described conduct in the statute constitutes a separate statutory offense.  See id.








Section 15.01 of the penal code defines criminal attempt.  Tex.
Penal Code Ann. ' 15.01(a)
(Vernon 2003).  The statute provides, AA person commits an offense if, with specific intent to commit an
offense, he does an act amounting to more than mere preparation that tends but
fails to effect the commission of the offense intended.@  Id.  We hold that in reviewing whether the trial
court erred by allowing the State to charge in the disjunctive, the fact that
the offenses were not completed has no effect. 
Appellant correctly points out that there have been no cases that allow
the State to avoid the unanimity requirement when only attempted offenses are
alleged. Additionally, article V, section 13 of the Texas Constitution does not
specify that the unanimity requirement applies only to completed offenses.  See
Tex. Const. art. V, ' 13.  Therefore, we hold that
article V applies to inchoate offenses. 








A jury verdict in a criminal case must be unanimous.  Tex.
Const. art. V, ' 13.  A unanimous verdict ensures that the jury
agrees on the factual elements underlying an offense_it is
more than mere agreement on a violation of a statute.  Francis, 36 S.W.3d at125.  A trial court may submit a disjunctive jury
charge and obtain a general verdict where the alternate theories involve the
commission of the Asame
offense.@  Finster, 152 S.W.3d at 218.  If an
indictment alleges different methods of committing the same offense in
the conjunctive (Aand@), it is not improper to submit the different methods to the jury in
the disjunctive (Aor@).  Kitchens v. State,
823 S.W.2d 256, 258 (Tex. Crim. App. 1991), cert. denied, 504 U.S. 958
(1992).  Of course, if the application
paragraph of the charge authorizes conviction only upon a finding of both ways
of committing the offense (by using Aand@), it is
necessary for the State to prove both means.  Ortega v. State, 668 S.W.2d 701, 707
(Tex. Crim. App. 1984) (op. on reh=g), overruled on other grounds by Gollihar v. State, 46 S.W.3d
243, 252 (2001).  When a defendant is
charged with multiple offenses, the jury charge may submit the offenses
in the disjunctive, but the trial court must instruct the jury that it must be
unanimous in deciding which offense the defendant committed, and the record
must show that the verdict is unanimous. 
Ngo v. State, 175 S.W.3d 738, 749 & n.43 (Tex. Crim. App.
2005).  We must determine whether the
jury charge merely charged alternative theories of committing the same offense
or whether the charge included two or more separate offenses charged
disjunctively.  See Finster, 152
S.W.3d at 218. 








The attempted breast-touching, asking G.T. to touch appellant=s genitals, and appellant=s offering G.T. money so that he could touch her Aprivate@ are
different offenses and therefore should not have been charged in the
disjunctive within the same count IV.  See
Francis, 36 S.W.3d at 125.  By the
trial court=s doing so,
it is possible that the jury did not unanimously decide on which offense
appellant was guilty of under this count. 
See id. (stating that six members could have found defendant
guilty of one offense under the statute, while the other six could have found
defendant guilty of the second offense); see also Ngo, 175 S.W.3d at 749
(holding that the charge might have led jurors to think that they only had to
agree on a guilty verdict, instead of specifying that they had to agree on the
specific criminal act set out in the charge). 
The State=s argument
that only one offense was proven beyond a reasonable doubt is not
compelling.  The charge should not have
included offenses for which the State did not meet its burden of proof.  See, e.g., Garza Garcia v. State, 787
S.W.2d 185, 185 (Tex. Crim. App._Corpus
Christi 1990, no pet.) (noting appellant moved for directed verdict alleging
State failed to meet burden of proof). Although it would be reversible error
entitling appellant to an acquittal, the jury could have convicted appellant of
one (or both) of the offenses for which the State contends the evidence is
insufficient.  Because we are unable to
determine which offense in count IV the jury convicted appellant of, we
conclude the trial court erred by charging the jury disjunctively with three possible
offenses in count IV. 

2.  Harm Analysis








Having found error in the court=s charge on count IV, we must determine whether sufficient harm
resulted from the error to require reversal. 
Error in the charge, if timely objected to in the trial court, requires
reversal if the error was Acalculated to injure the rights of [the] defendant,@ which means no more than that there must be some harm to the
accused from the error.  Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 1981); see also Abdnor, 871 S.W.2d at 731-32; Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g).  In other words, a properly
preserved error, which occurred in this case, will call for reversal as long as
the error is not harmless.  Almanza,
686 S.W.2d at 171.  In making this
determination, Athe actual
degree of harm must be assayed in light of the entire jury charge, the state of
the evidence, including the contested issues and weight of probative evidence,
the argument of counsel and any other relevant information revealed by the
record of the trial as a whole.@  Id.; see also Ovalle
v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

We are unable to determine whether the jury=s verdict was unanimous as to any of the count IV offenses.  The charge did not include Ngo=s unanimity instruction.  In
addition, we cannot tell from the record whether the verdict was unanimous or
not.  Therefore, we are unable to
determine beyond a reasonable doubt that the error did not contribute to
appellant=s
conviction.  See Francis, 36
S.W.3d at 125 (sustaining the appellant=s issue because the charge allowed the appellant to be convicted on
less than a unanimous verdict).  We
sustain issue three, reverse the judgment of the trial court as to count IV,
and remand count IV to the trial court for a new trial.

VI.  Legal and Factual
Sufficiency








In issues four through nine, appellant argues that the evidence is
legally and factually insufficient to support his convictions.  Specifically, he contends that the evidence
is legally and factually insufficient to support the jury=s verdict that he was guilty of the offenses alleged in count III,
count V, and count VI of the indictment. 
Count III charged appellant with indecency with a child by touching R.T.=s genitals, count V charged him with aggravated sexual assault by
penetrating R.T.=s mouth with
appellant=s penis, and
count VI charged him with aggravated sexual assault by penetrating R.T.=s anus.

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a
conviction, we view all the evidence in the light most favorable to the verdict
in order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d 691, 693
(Tex. Crim. App. 2005).








In reviewing the factual sufficiency of the evidence to support a
conviction, we are to view all the evidence in a neutral light, favoring
neither party.  See Zuniga v. State,
144 S.W.3d 477, 481 (Tex. Crim. App. 2004). 
The only question to be answered in a factual sufficiency review is
whether, considering the evidence in a neutral light, the fact finder was
rationally justified in finding guilt beyond a reasonable doubt.  Id. at 484.  There are two ways evidence may be factually
insufficient:  (1) when the evidence
supporting the verdict or judgment, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment and,
weighing all of the evidence, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt. 
Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id.  
     In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the
evidence.  Id. at 484,
486-87.  An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Analysis








Appellant argues that the evidence is legally and factually
insufficient because there were numerous discrepancies between R.T.=s statements before the trial and his live testimony.  Appellant also asserts that there was never a
medical examination performed on R.T. that would corroborate his testimony and
that G.T.=s testimony
is the only other evidence that alleges that appellant assaulted R.T.  Additionally, appellant claims that R.T.=s claims are suspicious because of the long time, approximately a
year, that had passed from R.T.=s removal from the home until R.T. told anyone about the abuse.  The State contends that there is ample
evidence to show that appellant sexually abused R.T.  Further, the State argues that the delay in
R.T.=s making the statements does not require reversal under the legal and
factual sufficiency standards because the evidence shows that he was reticent
to tell anyone about the abuse, especially strangers.

Adams testified that she spoke to R.T. on January 8 and 9, 2003, and
that he did not disclose to her that he had been sexually abused, even though
she gave him an opportunity to do so.  In
addition, Kerry Hererra, a CPS child case worker, testified that R.T. had five
interviews with Dr. Spiller, a psychologist, and that when Dr. Spiller asked
R.T. if he had been the victim of sexual abuse, he stated, AI don=t know@ and AI don=t remember.@  








Polly testified that she started counseling R.T. in April 2003.  She stated that she built a rapport with R.T.
and that he had exhibited signs of being sexually abused.  However, on cross-examination, Polly stated
that R.T.=s behavior
could be consistent with sexual abuse, family violence, or both family violence
and sexual abuse.  In February 2004, R.T.
finally disclosed to Polly that appellant had sexually abused him.  R.T. told Polly that appellant had fondled
his penis and that appellant made him touch appellant=s penis.  In regard to the
questions asked by Dr. Spiller, Polly testified that it would not have been
unusual for R.T. to answer AI don=t know@ and AI don=t remember@ for various
reasons, such as fear or shame, or if R.T. had not felt comfortable with Dr.
Spiller.

Cleveland testified that she interviewed R.T. and G.T. as part of the
investigation.  During her testimony, the
State introduced an April 4, 2003 videotape of G.T.=s interview with Cleveland at the Children=s Advocacy Center. During the interview, G.T. stated that one day she
went inside to get her sister=s jacket and saw appellant trying to touch R.T. on his penis while
R.T. was watching cartoons.  G.T. stated
that she asked R.T. if he wanted to go outside and play with her, C.R., and
E.R., and he said yes and went outside with G.T.  Later in the interview, G.T. stated that this
incident occurred in the living room when Rosa was at work and that appellant
tried to touch R.T.=s penis with
his hand.  She further stated that
although she saw appellant try to touch R.T., R.T. had never told her that appellant
had sexually abused him. 








G.T.=s second
interview on June 4, 2004, was also introduced at the trial.  G.T. told Cleveland that one day she went
inside the house and saw appellant trying to make R.T. put his mouth on
appellant=s penis, and
when she saw this, she told R.T. to go outside with her, which he did.

The State also introduced a June 4, 2004 videotape of R.T.=s interview with Cleveland. 
During the interview, R.T. told Cleveland that appellant made him touch
appellant=s penis with
his mouth.  He also stated that when he
was with appellant in the living room, appellant took R.T.=s hand and made him touch appellant=s penis.  R.T. stated that
appellant made him touch appellant=s penis five to ten times and that all of the sexual assaults happened
in the living room.  In addition, R.T.
told Cleveland that appellant touched R.T.=s penis with his hand under R.T.=s clothes while they were both standing up.  R.T. stated that appellant had made him put
his mouth on appellant=s penis more
than ten times, but that appellant never put his mouth on R.T.=s penis and never hurt his bottom in any other way.  However, R.T. later corrected himself and
stated that he had forgotten, but that appellant had put his penis in his
bottom when he was six or seven years old, that appellant was behind him when this
happened, and that when he tried to turn around, appellant would not let
him.  R.T. stated that when the assault
occurred, he had all his clothes on.








At trial, Christie Cook, R.T.=s former foster mother, testified that she talked with R.T. on
Memorial Day weekend in May 2004 after he had sexually acted out while they
were at the lake.  During this
conversation, R.T. confided in Cook that appellant had sexually abused
him.  Specifically, R.T. said that
appellant would force his head on appellant=s penis, appellant would put his penis in R.T.=s bottom, and that appellant would put his mouth on R.T.=s penis. 

At trial, R.T. testified that appellant touched him on his bottom and
penis. R.T. stated that appellant put his penis in R.T.=s bottom about six or seven times, and that when appellant did this,
R.T.=s pants were down and it hurt him. 
R.T. stated that appellant grabbed his hand and tried to make him touch
appellant on his penis.  He also
testified that appellant touched his penis, but when appellant did this, he
moved appellant=s hand away
and pulled up his pants.  R.T. stated
that appellant tried to make him put his mouth on appellant=s penis five to six times, and on the last time, appellant got R.T. to
put his mouth on appellant=s penis and then R.T. Awashed it off@ of his
mouth. R.T. stated that every time appellant touched him inappropriately, he
would tell Rosa, and she would call the police, but appellant would run away
before the police arrived at their home. 









During trial, G.T. testified that she saw appellant touch R.T.
inappropriately only one time.  G.T.
stated that when Rosa was at work, appellant tried to get R.T. to put his mouth
on appellant=s penis, but
that R.T. did not do it because G.T. walked in and told R.T. to go outside and
play.  In addition, G.T. testified that
during this incident, R.T. was wearing all of his clothes and that appellant
had his pants unzipped.

Rosa testified that the children never informed her that appellant had
touched them inappropriately, and she never saw them being touched
inappropriately.  She stated that she
would work on the weekends and that appellant would watch the children while
she was at work.  Although she testified
that the police had never been called because R.T. told her that appellant had
sexually abused him, appellant did use physical violence against R.T. and G.T.








Applying the appropriate standards of review, we hold that the
evidence is legally and factually sufficient to support appellant=s convictions.  The jury, as the
trier of fact, was free to weigh the evidence and resolve any conflicts in the
witnesses=
testimony.  See Elder v. State,
132 S.W.3d 20, 26 (Tex. App.CFort Worth 2004, pet. ref=d), cert. denied, 125 S. Ct. 1645 (2005); see also Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  We
hold that the evidence, when viewed in the light most favorable to the verdict,
supports a determination beyond a reasonable doubt that appellant was guilty of
indecency with a child as alleged in count III, that appellant was guilty of
aggravated sexual assault as alleged in count V, and that appellant was guilty
of indecency with a child as alleged in count VI.  We overrule appellant=s issues four, six, and eight. 
Additionally, when viewed neutrally, the evidence is not so obviously
weak as to render the verdict clearly wrong or so greatly outweighed by
contrary proof as to indicate manifest injustice.  We overrule issues five, seven, and
nine.  

VII.  Conclusion

Having overruled appellant=s first, second, and fourth through ninth issues, we affirm the
judgment of the trial court as to counts I, III, V, VI, and VII.  Having sustained his third issue, we reverse
the judgment of the trial court on count IV and remand the cause for a new
trial on that count.

 

 

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL
F:    LIVINGSTON, DAUPHINOT, and HOLMAN,
JJ.

 

DAUPHINOT,
J. filed a dissenting and concurring opinion.

 

PUBLISH

 

DELIVERED:
July 25, 2006











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                        NO.
2-04-514-CR

 

 

RODOLFO RANGEL                                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 78TH DISTRICT COURT OF
WICHITA COUNTY

 

                                              ------------

 

            DISSENTING AND
CONCURRING OPINION ON THE 

    STATE=S
SECOND PETITION FOR DISCRETIONARY REVIEW

 

                                              ------------

 








The majority thoughtfully addresses a thorny issue that asks how trial
courts can protect child complainants without sacrificing the defendant=s constitutional due process rights. 
In upholding the trial court=s decision that confrontation is not required when the child is
unavailable to testify, the majority relies on existing statutory law, as
indeed it must since courts are not legislative bodies.  But I respectfully submit that that existing
law does not adequately protect the defendant=s constitutional rights to cross-examine and confront the witnesses
against him, especially in light of Crawford v. Washington.[1] 

As our sister court in Waco has provided,

In Crawford,
the Supreme Court revisited its prior decision in Ohio v. Roberts, in
which the Court had held that the admission of the hearsay statement of an
unavailable witness does not violate the right of confrontation so long as the
statement Afalls
under a >firmly
rooted hearsay exception= or
bears >particularized
guarantees of trustworthiness.=A  The Court concluded in Crawford that
the Roberts rationale was not Afaithful to the original
meaning of the Confrontation Clause.@ 

 

In place of the Roberts standard, the Court adopted a two‑part
test, depending on whether the statement at issue is Atestimonial@ or Anon‑testimonial.@[2]          

In Crawford, the Supreme Court explained,

Where
nontestimonial hearsay is at issue, it is wholly consistent with the Framers=
design to afford the States flexibility in their development of hearsay lawCas
does Roberts, and as would an approach that exempted such statements
from Confrontation Clause scrutiny altogether. 
Where testimonial evidence is at issue, however, the Sixth Amendment
demands what the common law required: unavailability and a prior opportunity
for cross‑examination.[3]  

 

 








The Confrontation Clause provides, AIn all criminal prosecutions, the accused shall enjoy the right . . .
to be confronted with the witnesses against him.@[4]  As our sister court in Austin
has pointed out,

A
central holding of Crawford is that the Confrontation Clause is a rule
of procedure, not of evidence.  AIf
there is one theme that emerges from Crawford, it is that the
Confrontation Clause confers a powerful and fundamental right that is no longer
subsumed by the evidentiary rules governing the admissibility of hearsay
statements.@ The
constitutional requirement that a testimonial statement be subject to cross‑examination
in criminal cases Adoes
not evaporate when testimony happens to fall within some broad modern hearsay
exception, even if the exception is sufficient in other circumstances.@  In this respect, it is irrelevant that a
testimonial statement may meet the excited utterance exception test.  Mere reliability is not enough to satisfy the
Confrontation Clause where the extrajudicial statements are of a testimonial
nature.  ALeaving
the regulation of out‑of‑court statements to the law of evidence
would render the Confrontation Clause powerless to prevent even the most
flagrant inquisitorial practices.@  Thus, under Crawford, the
Confrontation Clause analysis will usually turn on the question of whether a
particular statement is testimonial or nontestimonial in nature.  On the other hand, the Roberts line of
cases may remain instructive or controlling with regard to nontestimonial
hearsay.[5]

 

Section 2(b) of article 38.071 of the code of criminal procedure, the
statute at issue in the case before us, provides,








If a recording is made under Subsection (a) of this section and after
an indictment is returned or a complaint has been filed, by motion of the
attorney representing the state or the attorney representing the defendant and
on the approval of the court, both attorneys may propound written
interrogatories that shall be presented by the same neutral individual who made
the initial inquiries, if possible, and recorded under the same or similar
circumstances of the original recording with the time and date of the inquiry
clearly indicated in the recording.[6]

The statement contemplated by the statute is clearly testimonial, as
the majority has declared.  But written
interrogatories presented by a neutral individual are neither confrontation nor
cross-examination as mandated by state and federal constitutions and Crawford.  This statutory provision, instead of curing
the confrontation problem when the child is unavailable, compounds the problem
by allowing the creation of yet another testimonial statement not subject to
the procedural safeguards of confrontation and cross-examination.         The
Crawford court held that A[w]here testimonial statements are at issue, the only indicium of
reliability sufficient to satisfy constitutional demands is the one the
Constitution actually prescribes: confrontation.@[7]  Additionally, as Judge Cochran
has noted in a unanimous opinion of the Texas Court of Criminal Appeals,  








The
Confrontation Clause may act as a brake upon the admission of Atestimonial@
child outcry statements unless the child actually testifies or is presently
unavailable but has been subject to cross‑examination in a prior
proceeding.[8]

 

Consequently, while I agree with the majority=s disposition of the remaining issues in the case now before this
court, I must respectfully dissent from the majority=s holding that the article 38.071 provision for written
interrogatories satisfies the confrontation and cross-examination requirements
of due process.

 

LEE
ANN DAUPHINOT

JUSTICE

 

PUBLISH

DELIVERED: July 25, 2006











[1]Article
38.071(5) provides that an attorney for the State or the defendant can move to
have the videotape introduced.  See Tex. Code Crim. Proc. Ann. art.
38.071(5).  





[2]Courts
around the nation have struggled with the application of Crawford to
child witnesses, particularly with regard to how courts should apply the
concept that a statement is made Aunder circumstances which
would lead an objective witness reasonably to believe that the statement would
be available for use at a later trial,@ or whether the proper test
should be objective or subjective in nature.  Lagunas v. State, 187 S.W.3d 503, 519
(Tex. App.CAustin
2005, pet. ref=d).  





[3]In Wall,
although not a case involving the statement of a child, the court of criminal
appeals recently held, AThe
testimonial hearsay inquiry focuses on whether a reasonable declarant,
similarly situated (that is, excited by the stress of the startling event),
would have had the capacity to appreciate the legal ramifications of her
statement.@  184 S.W.3d at 742.





[4]The
Court stressed that whether or not a statement was sworn is not a determinative
factor in finding a statement to be testimonial.  Crawford, 541 U.S. at 52, 124 S. Ct.
at 1364; see Lagunas, 187 S.W.3d at 515. 






[5]We do
not agree with the State=s
contention that our prior opinion holds that any statement under 38.071 is automatically
testimonial.  However, under the facts of
this case, we determine that C.R.=s statement is testimonial. 





[6]We hold
that appellant forfeited his complaint regarding the election requirement
because he did not brief the issue, even though he lists it in the statement of
his issue.  If a party provides no
argument or legal authority to  support
its position, the appellate court may properly overrule the issue or point as
inadequately briefed.  Tex. R. App. P. 38.1(h); Tong v.
State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert. denied, 532
U.S. 1053 (2001); Mosley v. State, 983 S.W.2d 249, 256 (Tex.
Crim. App. 1998) (op. on reh=g), cert. denied, 526
U.S. 1070 (1999).  





[1]541 U.S. 36, 124 S.
Ct. 1354 (2004). 





[2]Hanson
v. State,180 S.W.3d 726, 731 (Tex. App.CWaco
2005, no pet.) (citations omitted).





[3]541 U.S. at 68, 124 S.
Ct. at 1374.





[4]U.S. Const. amend. VI; see Crawford,
541 U.S. at 42, 124 S. Ct. at 1359.





[5]Lagunas
v. State, 187 S.W.3d 503, 515 (Tex. App.CAustin
2005, pet. ref=d)
(citations omitted).





[6]Tex.
Code Crim. Proc. Ann. art. 38.071, ' 2(b) (Vernon 2005).





[7]Crawford, 541
U.S. at 69, 124 S. Ct. at 1374.





[8]Martinez
v. State, 178 S.W.3d 806, 811 n.21 (Tex. Crim. App.
2005).















 [JH1]

On PDR Majority by Justice
Livingston; Dissent and Concur by Justice Dauphinot